Kennedy, J.
*22 {¶ 1} Relator, Lauren Kesterson, seeks a writ of mandamus to compel respondent, Kent State University, to comply with her records request under the Public Records Act, R.C. 149.43. Because Kesterson has not shown that she is entitled to additional records beyond those that she has already received pursuant to her request, we deny the writ. We award Kesterson statutory damages in the amount of $1,000 and attorney fees, but we deny court costs.
Background
{¶ 2} On April 13, 2016, by e-mail and certified mail, Kesterson sent a voluminous public-records request to Kent State, seeking the following records:
1. Any insurance policy that could be construed to cover claims against the University for violating Title IX [ 20 U.S.C. 1681 et seq. ] or *899 denying a student-athlete the equal protection of the laws under the Fourteenth Amendment.
2. Any insurance policy that could be construed to cover claims against a present or former University employee for violating Title IX, denying a student-athlete the equal protection of the laws under the Fourteenth Amendment, or intentionally inflicting serious emotional distress on a student-athlete.
3. All records regarding Karen Linder's departure from the University (including all communications such as emails, text messages, voicemails, etc.);
4. All records of any restrictions or limitations Kent State University placed on Karen Linder following or related to her departure (such as restrictions on contacting members of the softball team, accessing non-public areas of [Kent State] facilities such as the softball team's locker *23 room, using [Kent State] facilities for her own economic benefit, or disparaging or defaming any past or present members of the softball team or their parents);
5. All records of communications involving any Athletic Department personnel regarding Lauren Kesterson from August 28, 2015 to the present;
6. All records of communications between Joel Nielsen and Karen Linder from August 20, 2015 to the present regarding Lauren Kesterson, any complaint she initiated regarding Linder (including any investigation of that complaint), or Linder's resignation (including the surrounding circumstances and the terms of her departure);
7. All records of communications between Janet Kittell and Karen Linder from August 20, 2015 to the present regarding Lauren Kesterson, any complaint she initiated regarding Linder (including any investigation of that complaint), or Linder's resignation (including the surrounding circumstances and the terms of her departure);
8. All records of communications between Joel Nielsen and Erin Barton regarding Lauren Kesterson or Karen Linder from August 20, 2015 to September 30, 2015;
9. All records of communications between Joel Nielsen and Pamela Fitzgerald regarding Lauren Kesterson or Karen Linder from August 20, 2015 to the present;
10. All records of communications between Joel Nielsen and Loretta Shields regarding Lauren Kesterson or Karen Linder from August 20, 2015 to the present;
11. All records of communications between Joel Nielsen and any member of Human Resources Staff (including Office of Compliance/Equal Opportunity and Affirmative Action or Title IX) regarding Lauren Kesterson or Karen Linder from August 20, 2015 to the present;
12. All records Joel Nielsen generated or that were generated on his behalf regarding Lauren Kesterson (including records regarding her rape report) or Karen Linder from August 20, 2015 to the present including any handwritten notes, electronic notes, calendar entries, emails, text messages, etc.;
13. All records Joel Nielsen received regarding Lauren Kesterson *900 (including records regarding her rape report) or Karen Linder from August 20, 2015 to the present including any handwritten notes, electronic notes, calendar entries, emails, text messages, etc.; *24 14. Records of any check(s) or payment(s) provided to Karen Linder after August 28, 2015 (including images of any check(s));
15. All records regarding Linder's use of [Kent State] facilities since her August 28, 2015 resignation (including all communications such as emails, text messages, voicemails, etc.);
16. Regarding Kent State softball's official Facebook and Twitter accounts:
a. All records of postings since August 28, 2015 (including deleted posts);
b. All records regarding which individuals have or had access to those accounts since August 28, 2015;
17. All records regarding any reports by Lauren Kesterson regarding sexual assault, failure to take appropriate steps in response to a sexual-assault report, retaliation for reporting sexual assault, or other mistreatment by any Kent State student, former student, personnel, or former personnel (including all communications such as emails, text messages, voicemails, etc.);
18. All records regarding any efforts by the University to prevent or remedy retaliation against Lauren Kesterson for reporting that a Kent State baseball player had raped her;
19. All records regarding any efforts by the University to prevent or remedy retaliation against Lauren Kesterson for reporting that former head softball coach Karen Linder had engaged in a cover up of Lauren Kesterson's rape report;
20. From August 2012 to the present, records of emails from April Hull to any member(s) of the softball team that include reference to training sessions (such as compliance or NCAA-mandated training for student-athletes); and
21. All records of training or information provided to the Kent State varsity baseball team regarding Title IX, gender equity, sexual harassment, sexual assault, Sexual and Relationship Violence Support Services, or the University's policies or procedures for reporting instances of gender-based harassment or sexual assault (from the 2012-2013 academic year to the present).
{¶ 3} On April 15, 2016, Kent State acknowledged receipt of the request and stated that responsive records were being identified and gathered. Kesterson's attorney, Ashlie Sletvold, e-mailed Kent State twice in May, asking when she *25 could expect a response. She followed up with Kent State by e-mail again on June 7 and June 14, having received no documents.
{¶ 4} On June 20, counsel for Kent State, Nichole DeCaprio, responded with a detailed letter and provided 446 pages of responsive records. The records that Kent State sent were responsive to request numbers 1, 2, 9, 14, 16, 17, 20, and 21, although Sletvold alleged that some responses were "merely partial and incomplete." Kent State objected to the remaining requests as overbroad. Nonetheless, it searched for records responsive to request *901 numbers 6, 7, 8, 10, 12, and 13 but found none.
{¶ 5} On June 29, 2016, another of Kesterson's attorneys, Peter Pattakos, wrote to Kent State, raising concerns with its responses and its explanations for not responding to some requests. Kesterson also revised her first and second requests to include "copies of all insurance policies that the University carries or has carried since 2014." Kent State provided no further response.
{¶ 6} Kesterson filed her mandamus complaint on August 2, 2016, alleging that Kent State's objections were meritless and that her request "has been outstanding for 110 days." Kesterson asks for "a peremptory writ of mandamus directing Kent State to make responsive records available promptly," an award of attorney fees and costs, an award of statutory damages, and "any other relief available to the firm * * * under R.C. 149.43."
{¶ 7} On October 11, 2017, we granted Kesterson an alternative writ setting forth a schedule for the parties to present evidence and submit briefs. 150 Ohio St.3d 1449, 2017-Ohio-8136, 83 N.E.3d 936. Kent State filed 13 volumes of sealed evidence, and the parties filed briefs.
Kesterson's federal litigation
{¶ 8} On February 9, 2016, Kesterson filed a complaint against Kent State and Karen Linder in federal district court alleging, among other claims, civil-rights violations under Title IX of the Education Amendments of 1972, as amended. Kesterson v. Kent State Univ. , N.D. Ohio case No. 5:16-CV-00298, 2018 WL 827864. In March 2017, Kesterson served discovery requests on the defendants, including requests for production of documents ("RPD"). In July 2017, Kent State produced approximately 6,100 pages of documents in response to Kesterson's RPD, and in September, the university provided Kesterson with additional documents on two occasions. Kesterson's federal litigation is ongoing.
Ohio's Public Records Act
{¶ 9} It has long been the " 'rule in Ohio * * * that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people.' "
*26 State ex rel. Patterson v. Ayers , 171 Ohio St. 369, 371, 171 N.E.2d 508 (1960), quoting 35 Ohio Jurisprudence, Inspection of Records: Generally, Section 41, at 45 (1934). "The Public Records Act reflects [Ohio's] policy that 'open government serves the public interest and our democratic system.' " State ex rel. Glasgow v. Jones , 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 13, quoting State ex rel. Dann v. Taft , 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. It states that "[u]pon a request made in accordance with division (B) of this section * * *, a public office * * * shall transmit a copy of a public record to any person * * * within a reasonable period of time after receiving the request for the copy." R.C. 149.43(B)(7).
{¶ 10} The act defines "public record" as "records kept by any public office, including, but not limited to, state * * * units." R.C. 149.43(A)(1) ; see also R.C. 149.011(A) (defining "public office"). R.C. 149.011(G) provides that " '[r]ecords' includes any document, device, or item, regardless of physical form or characteristic, * * * created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." Moreover, "a state university is considered a 'public office' for purposes of the Public Records Act."
*902 State ex rel. Rea v. Ohio Dept. of Edn. , 81 Ohio St.3d 527, 530, 692 N.E.2d 596 (1998).
Mandamus
{¶ 11} At the time Kesterson filed her complaint, "[m]andamus [was] the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." (Emphasis added.) State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees , 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6 ; R.C. 149.43(C)(1).[1]
{¶ 12} Despite the liberal construction of the Public Records Act "in favor of disclosure," State ex rel. Zidonis v. Columbus State Community College , 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 19, Kesterson "must still establish entitlement to the requested extraordinary relief by clear and convincing evidence," State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office , 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16. The standard of clear and convincing evidence is
*27 that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
Cross v. Ledford , 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. And, unlike in other mandamus cases, "[r]elators in public-records mandamus cases need not establish the lack of an adequate remedy in the ordinary course of law." State ex rel. Am. Civ. Liberties Union of Ohio v. Cuyahoga Cty. Bd. of Commrs. , 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 24.
{¶ 13} Under R.C. 149.43(B), a public office may produce the requested records prior to the court's decision, which renders the mandamus claim for production of records moot. State ex rel. Striker v. Smith , 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 18-22. Moreover, "[a]n event that causes a case to become moot may be proved by extrinsic evidence outside the record." State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Dupuis , 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8. Nonetheless, a relator may still be entitled to other forms of relief if the production of records was not completed "within a reasonable period of time." R.C. 149.43(B) and (C).
Analysis
Records produced following Kesterson's mandamus complaint
{¶ 14} Kesterson contends that in connection with the mediation conducted in this court and her federal litigation, Kent State provided additional records that were responsive to the remaining requests. Therefore, Kesterson argues Kent State was dilatory in responding to the April *903 2016 records request. Indeed, in large part, Kesterson's federal RPD was identical to her April 2016 records request.
{¶ 15} Kent State maintains that it fully responded to Kesterson's April 13, 2016 request by October 28, 2016. Despite DeCaprio's attestation that the response to the request was complete in October 2016 and that any further records provided on or after that date were merely provided "as a courtesy," the evidence demonstrates that Kent State provided many additional responsive records through December 2016. Further, Kent State's 2017 responses to Kesterson's federal RPD seem to indicate that it provided even more records responsive to Kesterson's April 2016 request in that litigation.
{¶ 16} According to DeCaprio, on October 28, 2016, Kent State provided Kesterson with records relating to Linder's reservation of the Kent State Field *28 House (an athletic facility) and records of "training provided to incoming students at Kent State," which are responsive to request numbers 15 and 21. On November 8, Kent State produced a variety of insurance policies held by the university as well as e-mail messages collected from Kent State employee Casey Cegles, a deputy athletic director, which are responsive to request numbers 1, 2, 5, and 12. The next day, Kent State produced additional training records, which are responsive to request number 21. On November 17, Kent State produced even more insurance policies, responsive to request numbers 1 and 2. And on November 29, Kent State produced e-mails collected from athletic-department personnel regarding Kesterson (responsive to request number 5) and e-mails from and to Nielsen regarding Kesterson (responsive to request numbers 11, 12, and 13).
{¶ 17} On December 1, 2016, Kent State produced a slew of additional records, including a variety of e-mails regarding Kesterson and records of her rape report, which are responsive to request numbers 5, 9, 13, and 17. The same day, Kent State provided Kesterson with even more e-mails collected from Eric Oakley, an assistant softball coach at Kent State, involving Kesterson and/or her rape report, which are responsive to request numbers 5, 12, 13, and 20. Finally, on December 2, 2016, Kent State provided additional e-mails between athletic-department personnel, responsive to request numbers 5 and 20. The evidence establishes that Kent State has also since provided records responsive to request numbers 3, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21.
{¶ 18} While Kesterson does not concede that she has received all the records requested in April 2016, she fails to identify what categories of records are still incomplete. Kesterson notes 11 "examples" of records Kent State produced during discovery in her federal case that she argues are responsive to some of the categories of records she requested in April 2016. However, those documents have not been submitted as evidence in this case. Moreover, there is no evidence in the record to indicate that Kent State is still withholding records responsive to Kesterson's requests. Absent contrary evidence in the record, the materials Kent State has provided defeat Kesterson's allegation that the university has not fully responded to her April 2016 request. Accordingly, Kesterson's mandamus claim for the production of records is moot. See State ex rel. Cincinnati Enquirer v. Sage , 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10 (observing that mandamus is an appropriate remedy to compel compliance with the Public Records Act, and thus that the burden of proof is on the relator to establish entitlement to the writ by clear and convincing evidence).
*904 Timeliness of Kent State's production of responsive records
{¶ 19} Even when a claim for the production of records has been satisfied, a separate claim based on the untimeliness of the response persists unless copies of *29 all required records were made available "within a reasonable period of time." R.C. 143.49(B)(1). Under R.C. 149.43(C)(1), an award of statutory damages is available even if the records have been provided prior to the court's decision. Kesterson bears the burden to demonstrate that Kent State's response to her public-records request was unreasonably delayed. State ex rel. Dispatch Printing Co. v. Johnson , 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 44.
{¶ 20} Kesterson argues that Kent State violated R.C. 149.43 by failing to promptly prepare and provide all responsive records "within a reasonable time." We may award statutory damages "if the public record has not been provided promptly." State ex rel. Cincinnati Enquirer v. Deters , 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 22. "Reasonable period of time" is not defined in the Public Records Act, but "the determination of what is 'reasonable' depends upon all the pertinent facts and circumstances." Id. at ¶ 23. Moreover, " R.C. 149.43(A) envisions an opportunity on the part of the public office to examine records prior to inspection in order to make appropriate redactions of exempt materials." State ex rel. Warren Newspapers, Inc. v. Hutson , 70 Ohio St.3d 619, 623, 640 N.E.2d 174 (1994).
Claimed exception: overbreadth
{¶ 21} In defense of its failure to provide all responsive records when it responded to Kesterson's April 13, 2016 request, Kent State contends that it properly denied many of the requests as overbroad. According to Kent State, the fact that it continued to provide records throughout the mediation conducted in this court and Kesterson's federal litigation does not undermine its contention that it timely responded to the records request.
{¶ 22} It is axiomatic that " '[i]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.' " Zidonis , 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, at ¶ 21, quoting State ex rel. Fant v. Tober , 8th Dist. Cuyahoga No. 63737, 1993 WL 173743, *1 (Apr. 28, 1993), aff'd , 68 Ohio St.3d 117, 623 N.E.2d 1202 (1993). Yet, we have "never held that in order to constitute a viable request, the requester must specify the author and date of the records requested." State ex rel. Morgan v. New Lexington , 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 37. And "[a]lthough this may be helpful in identifying the requested records, the failure to do so does not automatically result in an improper request for public records." Id. However, "[i]n identifying the records at issue, the Public Records Act 'does not contemplate that any individual has the right to a complete duplication of voluminous files kept by government agencies.' " Glasgow , 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, at ¶ 17, quoting Warren Newspapers at 624, 640 N.E.2d 174.
*30 Communications
{¶ 23} Kent State argues that under Glasgow , Kesterson's requests for "all records of communications" between various individuals regarding certain subjects (request numbers 5 through 11) are unenforceable because they are overly broad. In Glasgow , we considered the relator's request for e-mail messages, text messages, and written correspondence sent and received by State Representative *905 Shannon Jones during a period of approximately six months "specifically including, but not limited to, any [communications] having as their subject matter Substitute House Bill 151 of the 127th General Assembly or discussions that led to the introduction of Substitute House Bill 151 or any predecessor bill." Id. at ¶ 5-7. Using the standards applicable to overbreadth challenges, we held that "insofar as Glasgow broadly sought all of Jones's work-related e-mail messages, text messages, and correspondence during her entire tenure as state representative, his request was improper because it was overly broad" and "impermissibly sought what approximated a 'complete duplication' of Jones's files." Id. at ¶ 19.
{¶ 24} In a case involving a request to a city police department for "any and all records generated * * * containing any reference whatsoever to Kelly Dillery," we determined the request was overbroad because the requesting party "failed in her duty to identify the records she wanted with sufficient clarity ." (Emphasis added.) State ex rel. Dillery v. Icsman , 92 Ohio St.3d 312, 314, 750 N.E.2d 156 (2001). More recently, we decided that a relator's request for "whole categories of complaint and litigation files without any limitation as to content or time period , was overbroad." (Emphasis added.) Zidonis , 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, at ¶ 23. We added that "without any temporal or content-based limitation," id. at ¶ 26, requests for " 'broad categor[ies] of records listed within an agency's retention schedule' " are not specific and enforceable under the Public Records Act, id. , quoting State ex rel. Zidonis v. Columbus State Community College , 10th Dist. Franklin No. 10AP-961, 2011-Ohio-6817, 2011 WL 6930336, ¶ 5.
{¶ 25} While Kesterson did cast a wide net for "communications," she limited each request temporally, by subject matter, and in all but one instance, by the specific employees concerned. See State ex rel. Bott Law Group, L.L.C. v. Ohio Dept. of Natural Resources , 10th Dist. Franklin No. 12AP-448, 2013-Ohio-5219, 2013 WL 6200196, ¶ 40-41 (observing that while the requests were "complex and expansive," they were limited by "timeframe, subject matter, and * * * specific employee(s) concerned" and therefore, "the relevant evidence and the applicable law d[id] not support the magistrate's conclusion that such complexity and expansiveness relieved [the Ohio Department of Natural Resources] of its obligation to promptly prepare all responsive records"). In short, Kesterson did not *31 request the "complete duplication" of anyone's files, nor does any individual request approach the type of vague and impermissibly broad request that we refused to enforce in Glasgow , Dillery , or Zidonis .
{¶ 26} We reject Kent State's contention that Kesterson's requests for communications required it to "guess at, and then provide, records with specific information of interest" to her. Under the Public Records Act, "to constitute improper research, a record request must require the government agency to either search through voluminous documents for those that contain certain information or to create a new document by searching for and compiling information from existing records." State ex rel. Carr v. London Corr. Inst. , 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 22, citing Morgan , 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, at ¶ 30-31, 35. Morgan makes clear that a request for e-mails sent or received by a specific individual regarding a specific topic during a reasonably short time period is not the type of request that we have previously found to constitute impermissible research. Morgan at ¶ 30, 33-35 (observing *906 that requests for information as opposed to specific records are improper under R.C. 149.43 and determining that Morgan's requests were not improper because they were for specific records, did not require the city to create new records, and specified individuals who would likely have and maintain the requested records). Under this precedent, Kesterson's requests for communications between specified Kent State employees did not require Kent State to conduct impermissible research under R.C. 149.43.
{¶ 27} And if any doubt remains, Kent State's conduct throughout this original action and Kesterson's federal litigation contradicts its claims of overbreadth. Kent State initially denied as overbroad request numbers 6 through 10 and 12 but also indicated that it performed a search for responsive e-mails and, in all but one instance,[2] averred that "[t]here are no emails responsive to this request." Not only is such a response self-contradictory, it is also unreasonable, as these requests were limited to communications between specific individuals and the university's failure to do any more than a search of e-mail correspondence was insufficient. Moreover, when Kesterson lodged the same requests during her federal litigation, Kent State's responsive pleading indicated that it produced additional records that were responsive to those requests, further undermining its claim that it timely and fully responded to Kesterson's request as required by R.C. 149.43(B).
Request numbers 3 and 4
{¶ 28} Request number 3 sought "[a]ll records regarding Karen Linder's departure from the University (including all communications such as emails, text *32 messages, voicemails, etc.)." The fourth request sought "[a]ll records of any restrictions or limitations Kent State University placed on Karen Linder following or related to her departure (such as restrictions on contacting members of the softball team, accessing non-public areas of KSU facilities such as the softball team's locker room, using KSU facilities for her own economic benefit, or disparaging or defaming any past or present members of the softball team or their parents)."
{¶ 29} These categories, in large part, impermissibly request "information" as opposed to specific records. In its June 20, 2016 correspondence, Kent State thus appropriately objected to these requests as "overly broad" and asked Kesterson to "define the records you are seeking with sufficient clarity to allow us to identify the specific records you are requesting." Kesterson did not further define these requests, instead maintaining that they were "lawful requests, which pertain to limited and specifically identified categories of documents."
{¶ 30} While Kent State later apparently provided some records responsive to these requests, we hold that its objections were valid and therefore that as to those two requests, Kent State did not fail to uphold its duties under R.C. 149.43.
Statutory damages
{¶ 31} R.C. 149.43(C)(1)[3] imposes damages at the rate of $100 "for each business day during which the public office * * * failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a *907 maximum of one thousand dollars." The Public Records Act provides that an award of statutory damages can be reduced if two conditions are satisfied. Carr , 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, at ¶ 41, citing R.C. 149.43(C)(1). A court may reduce or not award statutory damages if the court determines that "based on the ordinary application of statutory law and case law as it existed at the time," the public office "reasonably would believe that the conduct or threatened conduct of the public office * * * did not constitute a failure to comply with an obligation" under R.C. 149.43(B) and that the public office "reasonably would believe that the conduct or threatened conduct of the public office * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct." R.C. 149.43(C)(1)(a) and (b).
{¶ 32} Kent State violated R.C. 149.43(B) when it did not fully respond to Kesterson's request until, at the earliest, December 2, 2016, four months after Kesterson filed her mandamus complaint on August 2, 2016.
*33 Sage, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, at ¶ 46. Also, neither condition of R.C. 149.43(C)(1) is satisfied in this case. Accordingly, we grant Kesterson an award of statutory damages in the amount of $1,000.
Court costs
{¶ 33} Kesterson is not, however, entitled to court costs. On the date she made her public-records request and filed her mandamus complaint, the applicable version of the Public Records Act allowed for an award of court costs only "[i]f the court issues a writ of mandamus that orders the public office * * * to comply with division (B) of this section." R.C. 149.43(C)(2)(a). Accordingly, because we hold that Kesterson's mandamus claim is moot, we deny her request for court costs.
Attorney fees
{¶ 34} The plain and unambiguous language of the applicable version of R.C. 149.43(C)(2)(b)(i) requires an award of reasonable attorney fees when the public office or person responsible for the public records failed to timely respond, pursuant to R.C. 149.43(B), to the public-records request ("The court shall award reasonable attorney's fees * * * when * * * [t]he public office or person responsible for the public records failed to respond affirmatively or negatively to the public records request in accordance with the time allowed under division (B)" [emphasis added] ). An award of attorney fees pursuant to R.C. 149.43(C)(2)(b)(i) is not dependent upon the court having issued a judgment that orders compliance with the public-records law. See also R.C. 149.43(C)(3)(b)(i)[4] (court may award attorney fees if the court renders a judgment that orders the public office to comply with R.C. 149.43(B) or if the court determines the public office failed to timely respond to the request). The award of reasonable attorney fees is subject to reduction pursuant to R.C. 149.43(C)(2)(c).
{¶ 35} An award of reasonable attorney fees is appropriate under R.C. 149.43(C)(2)(b)(i) because Kent State violated R.C. 149.43(B) when it failed to produce all responsive records until at least four months after Kesterson filed this action. The court will make a final determination of the amount of attorney fees upon review of Kesterson's filing of an itemized application with independent evidence supporting the reasonableness of the hourly rates charged and the hours billed. The statutory guidelines in R.C. 149.43(C)(2)(c)
*908 will aid the court in determining the amount of fees to be awarded. Kesterson must demonstrate that she is entitled to an award of fees that is "reasonable" and "remedial." Id. Specifically, the itemized billing statements should reflect only time spent on the *34 public-records request, mandamus action, and the proof of entitlement to and reasonableness of the requested fees. Id. Kent State is entitled to respond to Kesterson's application, and this court, applying R.C. 149.43(C)(2)(c), could reduce the attorney fees if it finds that a "well-informed public office or person responsible for the requested public records reasonably" would believe the conduct "did not constitute a failure to comply" with a statutory obligation and that such conduct would "serve the public policy [underlying] the authority that [was] asserted as permitting that conduct." R.C. 149.43(C)(2)(c)(i) and (ii) ; see Sage , 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, at ¶ 37.
{¶ 36} Any person submitting an application for attorney fees should note that "fee applications submitted to this court should contain separate time entries for each task, with the time expended on each task denoted in tenths of an hour" and that "this court will no longer grant attorney-fee applications that include block-billed time entries." State ex rel. Harris v. Rubino , --- Ohio St.3d ----, 2018-Ohio-5109, --- N.E.3d ----, ¶ 7, 14.
Conclusion
{¶ 37} Kesterson has not shown by clear and convincing evidence that Kent State has failed to fully respond to her April 2016 records request. Therefore, she has not established her entitlement to the requested extraordinary relief in mandamus, and we deny the writ. Consequently, we also deny Kesterson's request for court costs.
{¶ 38} However, because Kent State failed to timely produce some of the responsive records, we award statutory damages to Kesterson under R.C. 149.43(C)(1) in the amount of $1,000, and grant her request for reasonable attorney fees.
Judgment accordingly.
French, DeWine, and DeGenaro, JJ., concur.
O'Connor, C.J., concurs in part and dissents in part, would deny the writ and award statutory damages, but would deny relator's request for fees and costs.
Fischer, J., concurs in part and dissents in part, would deny the writ but would not award statutory damages, and would deny relator's request for fees and costs.
O'Donnell, J., dissents and would grant the writ and relator's request for fees and costs.

Relator's complaint is governed by former R.C. 149.43 (2015 Am.Sub.H.B. No. 64), which was effective on the dates she made her public-records request and commenced her original action before this court. See State ex rel. Doe v. Smith , 123 Ohio St.3d 44, 2009-Ohio-4149, 914 N.E.2d 159, ¶ 24 ("Because this case was filed and pertains to a records request made after the effective date of the amendment [to R.C. 149.43 ], the amended version * * * applies here"). All references to R.C. 149.43, the Public Records Act, refer to that version unless otherwise noted.

As to request number 12, Kent State responded that "[t]here were no records responsive" to Kesterson's request.

This provision is now found in R.C. 149.43(C)(2) of the current Public Records Act.

This reference is to the current Public Records Act, effective November 2, 2018. This statutory amendment was originally adopted in 2016 Am.Sub.S.B. No. 321.