[Cite as *State ex rel. Youngstown Professional Firefighters IAFF Local 312 v. Youngstown*, 2021-Ohio-539.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE EX REL. YOUNGSTOWN PROFESSIONAL FIREFIGHTERS IAFF
LOCAL 312 ET AL.,

Relators,

v.

CITY OF YOUNGSTOWN,

Respondent.

---

**OPINION AND JUDGMENT ENTRY**
**Case No.** 20 MA 0089

---

Writ of Mandamus

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Writ of Mandamus Dismissed. Damage Claim Continued.

---

*Atty. Brooks Boron,* and *Atty. Ryan Lemmerbrock,* Muskovitz & Lemmerbrock, LLC, 1621 Euclid Avenue, Suite 1750, Cleveland, Ohio 44115, for Relators and

*Atty. Jeffrey Limbian,* City of Youngstown Law Director, and *Atty., Jeffrey Moliterno,* Senior Assistant Law Director, 26 South Phelps Street, Youngstown, Ohio 44503, for Respondent.

Dated: February 23, 2021

**PER CURIAM.**

{¶1} On August 24, 2020, Relators, Youngstown Professional Firefighters, IAFF Local 312 ("Union"), Union President Charles Smith, and Firefighter Patrick Holcomb filed this original action seeking a writ of mandamus to compel Respondent, City of Youngstown ("City") to appoint an "independent, neutral investigator" to conduct a "true and fair investigation" into a complaint filed by Holcomb against Fire Chief Barry Finley, and for the City to proceed with the issuance of discipline, if so warranted, following the conclusion of the investigation. The verified complaint in mandamus further sought to compel the City to fulfill a public record request, filed by Relators on June 18, 2020, for any and all documents related to the City's previous investigation of Holcomb's complaint, and for statutory damages and attorneys' fees resulting from the City's failure to provide the investigative report within a reasonable period of time.

{¶2} On August 31, 2020, one week after this original action was filed, the City provided a copy of the investigative report to Relators. As a consequence, on September 21, 2020, Relators filed an amended verified complaint for mandamus seeking to compel the City to appoint an independent, neutral investigator, but limiting its public records request to an award of statutory damages and attorneys' fees.

{¶3} The City filed its answer to the amended verified complaint on October 2, 2020. In a mandamus action, the pleadings have the same effect and must be construed in the same manner as in civil actions. R.C. 2731.09.

{¶4} Having reviewed sua sponte the amended verified complaint and the attachments thereto, we find that Relators do not have a clear legal right pursuant to section 163.63 of the Youngstown Codified Ordinances ("YCO") to the appointment of an independent, neutral investigator, or that the City has a clear legal duty pursuant to YCO 163.63 to appoint such an investigator. Accordingly, the writ, to the extent that it is predicated upon the appointment of an independent, neutral investigator, is dismissed.

{¶5} With respect to the timeliness of the City's response to the public records request, the City asserts in its answer that the investigation was delayed due to Holcomb's objection to the contents of his interview summary, which was a part of the investigative

report. The City has attached two affidavits to the pleading to establish Holcomb's failure to return an amended copy of his statement.

{¶6} In essence, the City argues in favor of dismissal of the mandamus to the extent that it is predicated upon the public records. However, as the City has attached the affidavits to the pleading, we construe that part of the pleading to be a motion for summary judgment on Relator's claim for statutory damages and attorneys' fees. Accordingly, Relators shall file a response to the City's motion for summary judgment within thirty days of the issuance of this memorandum opinion. A reply brief may be filed by the City in accordance with Ohio Civ.R. 6(C)(1).

## FACTS AND PROCEDURAL HISTORY

{¶7} The facts are taken from the amended verified complaint and the attachments thereto, which include the investigative report and the various statements taken during the City's investigation. "Where documents are attached or incorporated into the complaint, the face of the complaint to be evaluated includes those documents." *Adlaka v. Giannini*, 7th Dist. Mahoning No. 05 MA 105, 2006-Ohio-4611. "[M]aterial incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss." *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, fn. 1, 673 N.E.2d 1281 (1997)(various articles and public health studies attached to the complaint were considered in Rule 12 motion); see also *State ex. rel. GMS Mgt. Co., Inc. v. Vivo*, 7th Dist. Mahoning No. 10 MA 1, 2010-Ohio-4184, ¶ 14 (written correspondence attached to the complaint considered for the purposes of motion to dismiss).

{¶8} At a Fire Department B turn meeting at the Youngstown Fire Department on October 16, 2019, Chief Finley announced a measure passed by the Safety Committee reducing the number of Battalion Chiefs from six to four. Chief Finley explained that the Mayor had agreed to the measure and City Council had voted to implement the reduction. (Finley Interview, ¶ 2.)

{¶9} According to Chief Finley, the firefighters in attendance reacted disrespectfully to the announcement. (*Id.*, ¶ 3.) At some point, Holcomb raised his hand, in order to attract Chief Finday's attention, then stated, "My mom knows every judge and

every attorney and if I get hurt I'm going to own you, the fucking Mayor and the fucking City." (*Id.*, ¶ 3.)

**{¶10}** Captain Dave Cook was in attendance at the B turn meeting. Although Captain Cook did not hear the substance of Holcomb's comment, he opined that Holcomb's "loud speaking" was "clearly out of line." (Cook Interview, ¶ 2.) Later that day, Cook encouraged Holcomb to apologize to Chief Finley for the outburst. (*Id.*, ¶ 3.)

**{¶11}** Holcomb attempted to meet with Chief Finley the day after the meeting, ostensibly to apologize, however, the Chief refused to speak with him. (Holcomb Interview, ¶ 3.) Based on Holcomb's behavior at the B turn meeting, Chief Finley charged Holcomb with insubordination. (Finley Interview, ¶ 6.)

**{¶12}** Chief Finley, Holcomb, Battalion Chief Fred Beehler, and Smith attended the prediscipinary meeting on the insubordination charge held on October 28, 2019. Chief Finley expressed disappointment in Holcomb's outburst based on their professional and personal relationships. Holcomb was one of Chief Finley's firefighters before Finley was appointed to Chief, and Finley had also worked with Holcomb's father and knew the family. Chief Finley acknowledged that Holcomb was a good person and a good firefighter despite his outburst at the B turn meeting. (Holcomb Interview, ¶ 4, Finley Interview, ¶ 8.)

**{¶13}** Smith lobbied Chief Finley to impose a verbal rather than a written discipline, citing Holcomb's effort to apologize the day after the meeting. Smith reasoned that the matter could have been resolved but for the Chief's refusal to speak with Holcomb. Chief Finley responded to Smith that if he had talked with Holcomb the day after the B Turn meeting, he would have "put him through a wall." (Finley Interview, ¶10.)

**{¶14}** Chief Finley's response relates back to an incident in February of 2012, when then-Captain Finley entered into an agreed discipline after he assaulted a subordinate, by physically removing the subordinate from a chair and throwing him into a wall. The force employed by Finley was so great that the subordinate ricocheted off one wall then perforated the drywall of another. (Am. Verified Complt., ¶ 9.) The agreed discipline reads, in pertinent part, "[Finley] is subject to termination for any aggressive conduct (including but not limited to hostile physical contact, threat, threatening behavior or intimidating words or acts) engaged in by him against co-workers, employees or the public over the next ten years." (3/14/12 Agreed Discipline, p. 2.)

**{¶15}** According to Chief Finley, the expression "putting someone through a wall" has been parodied at the fire department in the years following the 2012 discipline. For instance, when Chief Finley installed an air conditioner for Holcomb, Holcomb joked that the Chief would "put him through a wall" if Holcomb did not compensate him. (Finley Interview, ¶10.)

**{¶16}** Battalion Chief Beehler concurred with Chief Finley's characterization of the phrase, citing a previous interaction between Finley and another member of the fire department where the phrase was invoked in jest. Beehler further stated that Finley's statement at the predisciplinary meeting did not sound threatening. (Beehler Interview, ¶ 8-9.)

**{¶17}** Holcomb ultimately agreed to a written reprimand. (Holcomb Interview, ¶ 5.) Chief Finley and Holcomb shook hands at the conclusion of the predisciplinary meeting, and Chief Finley said, "fuck you," which Holcomb interpreted to mean "something like 'you know better.'" Holcomb believed that the matter had been resolved. (*Id.*, ¶ 6-7.)

**{¶18}** However, at some point after the meeting, Chief Finley refused to sign an application for a scholarship for firefighter training for Holcomb. Holcomb filed a grievance based upon the Chief's refusal to sign the application, which was ultimately withdrawn. (5/30/20 Investigative Report, p. 16.) Further, on the sole occasion when Holcomb saw Chief Finley after the predisciplinary hearing and the two were not involved in the performance of their duties, Holcomb greeted the Chief but the Chief did not respond. (Holcomb Interview, ¶ 11.)

**{¶19}** On December 4, 2019, December 30, 2019, and January 17, 2020, the Union sent written requests to the City for a neutral third-party investigation of the events of October 28, 2019. (Am. Verified Compl., ¶ 12-14; 1/17/20 Letter, p. 3.) The January 17, 2020 correspondence reads, in relevant part, "Given the Law Department's public statement of support for Chief Finley after the FF Holcomb complaint was made (see your letter dated December 12, 2019, re: 'City of Youngstown Response to Vote of No Confidence'), [the Union] renews its request that a neutral third-party conduct the investigation." (1/17/20 Letter, p. 3). Neither the December 12th letter nor Holcomb's complaint is attached to the amended verified complaint.

{¶20} On January 24, 2020, City Law Director Jeffrey Limbian appointed Assistant City Law Director Terry Grenga to conduct the investigation. Grenga administered the investigation within the framework codified in YCO 163.63, captioned, "Violence and Bullying in the Workplace Policy, which reads, in pertinent part:

(a)  The City [ ] is committed to maintaining a workplace that is free from bullying, violence and/or threats of violence.  Any violent behavior that creates a climate of violence, hostility or intimidation will not be tolerated, regardless of its origin.

(b)  This policy includes but is not limited to the following behaviors:

* * *

(2) Direct or indirect threats.

* * *

(8)  High levels of conflict or tension within a work unit.

* * *

(h)  The City will promptly and thoroughly investigate all reports of threats of violence or incidents of actual violence and of suspicious individuals or activities. The identity and confidentiality of the individual making a report will be protected as much as possible. To maintain workplace safety and the integrity of its investigation, the City may suspend employees suspected of workplace violence or threats of violence, either with or without pay, pending investigation. If it is determined that threatening behavior has been exhibited or acts of violence were committed, the City will initiate an appropriate response. Anyone found to be responsible for threats of or actual violence or other conduct that is in violation of these guidelines will be subject to prompt disciplinary action up to and including termination of employment.

Case No. 20 MA 0089

{¶21} Grenga also relied on certain procedural provisions in YCO 163.53, captioned "Sexual Harassment Policy and Procedures," and reads, in relevant part:

(e)  Sexual Harassment Internal Investigation Procedure

(1)  The information alleging sexual harassment or improper behavior shall be given to a Department Head and the City Law Department.

(2)  The City Law Department shall:

> A.  Notify the person accused of engaging in improper activity that the issue has been brought to the attention of the City Law Department; and
>
> B.  Notify the person bringing forth the issue that a prompt investigation will be conducted by an individual employed outside of the accused's department, to be selected by the City Law Department.

(3)  The investigator will:

> A.  Conduct an interview with the person who brought the matter to the attention of management;
>
> B.  Interview the person who is alleged to have engaged in the improper activity.  That person will be given an opportunity to explain his/her recollection of the matter, along with any other information which that person wishes to provide;
>
> C.  Interview persons who have been identified as having some relevant information concerning any aspect of the occurrence(s);
>
> D.  Prepare written statements containing the information obtained in each interview.  This information will be provided to each person interviewed.  The person interviewed will be asked to review the

accuracy and completeness of the statement and return a signed copy to the investigator.

* * *

**{¶22}** Relators concede that the investigation was delayed while the Union and the City debated whether a union representative could accompany Holcomb to his interview. After the Union and the City exchanged a series of letters addressing the subject, Holcomb appeared without union representation at an interview conducted on February 11, 2020. Chief Finley was interviewed on January 29, 2020, Captain Cook was interviewed on February 20, 2020, with the interviews of Smith, and Battalion Chief Beehler (by telephone) conducted on February 24, 2020 and March 3, 2020, respectively.

**{¶23}** According to all present at the predisciplinary meeting, Chief Finley stated that he would have "put Holcomb through a wall" if he had spoken to him on October 17, 2019. In response to the foregoing statement, Holcomb told Grenga that he acknowledged to Finley that he had the right to be angry about Holcomb's conduct at the B turn meeting, but that Finley "should not have said [he would have put Holcomb through a wall if he spoke to him the following day]." (Holcomb Interview, ¶ 5.) However, Holcomb conceded that he thought "everything was resolved and clear" after the meeting. (*Id.*, ¶ 8.)

**{¶24}** Nonetheless, during his interview with Grenga, Holcomb stated that he felt intimidated and harassed by Chief Finley's words at the predisciplinary meeting. Holcomb further stated that he feels intimidated "since Finley does not speak to him." (Holcomb Interview, ¶ 12-13.)

**{¶25}** Grenga prepared summaries of each interview and provided a copy for review by each of the respective interview subjects. The interview summaries were a part of the investigative report, and each summary includes a cover page requesting that the interview subject review the attached summary for accuracy and completeness and return a signed copy to the Law Department. The interview summaries in the investigative report from Cook and Smith are signed, however, the interview summaries of Holcomb, Chief Finley, and Battalion Chief Beehler are not.

**{¶26}** The investigative report was issued on May 30, 2020. Grenga recommended dismissal of Holcomb's complaint, as she opined that Chief Finley did not violate YCO 163.63.

**{¶27}** According to Grenga's affidavit, which is attached to the City's amended answer, she notified Holcomb that his interview summary was complete and ready for his review on February 28, 2020. Holcomb retrieved the interview summary from the Law Department, but did not sign and return it as requested. On May 30, 2020, Grenga completed her investigation and prepared it for review.

**{¶28}** On June 3, 2020, Holcomb contacted Grenga to inform her that he objected to certain portions of his interview summary. Grenga instructed Holcomb to return the interview summary with his objections noted. Holcomb never returned his interview summary. (Grenga Aff., ¶ 12-19.)

**{¶29}** On June 4, 2020 and June 18, 2020, counsel for the Union sent correspondence to the City requesting an update on the status of the investigation. Included in the Union's June 18th letter is a request, pursuant to RC. 149.43, for copies of:

1.) All correspondence (emails, memoranda, letters, etc.) to or from City officials concerning the investigation of intimidation and harassment of [Holcomb and Chief Finley], including any correspondence to or from [Chief Finley] concerning the alleged intimidation and harassment.

2.) All witness statements and/or documents in the City's possession concerning the investigation of intimidation and harassment of [Holcomb] by [Finley].

3.) Any investigative report or summary prepared concerning the investigation of intimidation and harassment of [Holcomb] by [Chief Finley].

(6/18/20 Letter, p.1, Am. Verified Compl., Exhibit 4.)

Case No. 20 MA 0089

**{¶30}** Grenga and City Law Director Jeff Limbian aver that the copy of the investigative report sent in response to Relators' public records request was delayed due to Holcomb's failure to return his interview summary. (*Id.* at ¶ 18, Limbian Aff., ¶ 9-12). On August 31, 2020, after the original verified complaint for mandamus was filed in this original action, the City provided the investigative report and attachments thereto via electronic mail to counsel for Relators, despite the failure of Holcomb to return a signed copy of his interview summary. (Limbian Aff., ¶ 12.)

**{¶31}** In a letter from the City to counsel for the Union dated August 31, 2020, Limbian explains that Grenga's investigation was stalled when Holcomb notified her that he objected to portions of his interview summary, but he failed to return the interview summary with his objections. Limbian observes that City has "inferred" from the mandamus action "that the Union (and [Holcomb]) is acquiescing to Holcomb's [interview summary] as prepared by [Grenga]." (8/31/20 Letter, p. 2, Am. Verified Compl., Exhibit 5.) Limbian continues:

> While the City had previously not released the investigation due to Holcomb's failure to act, the City hereby releases the report as it was prepared and ready to send out [sic] in late May. Although the City did not release the investigation previously out of an abundance of caution and a consideration of fairness to argue right to review and sign his [interview summary], the City now releases the investigation due to the Union 's filing of a Mandamus action against the City seeking its release.
>
> * * *
>
> The City also attaches and releases all of the requested documents you sought in your June 18, 2020 public records request. While these documents are now available, it would of course have been impossible to release these records during a pending investigation in which the records themselves were not yet public or final.

(*Id.*)

Case No. 20 MA 0089

**{¶32}** In the amended verified complaint, Relators assert:

The City attempts to blame [Holcomb] for its untimely production of the properly requested records. However, [Holcomb] is not responsible for the City's production of public records. Additionally, the City never previously acknowledged the receipt of the public records request and could have provided the records regardless of [Holcomb's] actions.

(Am. Verified Compl., ¶ 38.)

## ANALYSIS

**{¶33}** We have jurisdiction to hear an original mandamus action pursuant to Article IV, Section 3(B)(1) of the Ohio Constitution and R.C. 2731.02. Entitlement to a writ of mandamus requires the relators to demonstrate: (1) they have a clear legal right to the relief, (2) the respondent has a clear legal duty to provide that relief, and (3) relators have no adequate remedy at law. *State ex rel. Taxpayers for Westerville Schools v. Franklin Cty. Bd. of Elections*, 133 Ohio St.3d 153, 2012-Ohio-4267, 976 N.E.2d 890, ¶ 12. Realtors carry the burden to establish the elements by clear and convincing evidence to obtain the writ. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235 (2011). A writ of mandamus is an extraordinary remedy which should be exercised with caution and issued only when the right is clear. *State ex rel. Brown v. Ashtabula Cty. Bd. of Elections*, 142 Ohio St.3d 370, 2014-Ohio-4022, 31 N.E.3d 596, ¶ 11.

**{¶34}** The Rules of Civil Procedure are generally applicable in original actions for extraordinary writs. *State ex rel. Sautter v. Grey*, 117 Ohio St.3d 465, 2008-Ohio-1444, 884 N.E.2d 1062, at ¶ 11. A court may dismiss a complaint sua sponte and without notice when the complaint is frivolous or the claimant obviously cannot prevail on the facts alleged in the complaint. *State ex rel. Allen v. Goulding*, 156 Ohio St.3d 337, 2019-Ohio-858, 126 N.E.3d 1104 (2019), reconsideration denied, 155 Ohio St.3d 1458, 2019-Ohio-1759, 122 N.E.3d 218 (2019), citing *State ex rel. Brooks v. O'Malley*, 117 Ohio St.3d 385, 2008-Ohio-1118, 884 N.E.2d 42, ¶ 5.

{¶35} YCO 163.63 provides, in relevant part, "[t]he City will promptly and thoroughly investigate all reports of threats of violence or incidents of actual violence and of suspicious individuals or activities." Relators do not dispute that an investigation of Holcomb's complaint was undertaken by the City. Accordingly, we need not consider and do not decide whether Relators have a clear legal right to an investigation, or the City has a clear legal duty to conduct an investigation.

{¶36} Relators' sole contention is that they have a clear legal right to the appointment of an independent, neutral investigator. Relators argue in the amended verified complaint that Grenga's investigation "was not a true or fair investigation, as evidenced by the investigative report." (Am. Verified Compl., ¶ 50.) The amended verified complaint continues, "Without an independent, neutral investigator, the City cannot adhere to requirements established in [YCO] 163.63." (*Id.*, ¶ 52.)

{¶37} Conspicuously absent from the plain and unambiguous language of YCO 163.63(h) is a clear legal right to or a clear legal duty to appoint an independent investigator. "'In construing a statute, we may not add or delete words.'" *State ex rel. Cincinnati Bell v. Pub. Util. Comm.*, 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68, at ¶ 32, quoting *State v. Hughes*, 86 Ohio St.3d 424, 427, 715 N.E.2d 540 (1999). The writ may not be issued to compel the observance of laws in general, but only to command the performance of a specific act specially enjoined by law to be performed. *State ex rel. Stanley v. Cook,* 146 Ohio St. 348, 66 N.E.2d 207 (1946), paragraph seven of the syllabus. Accordingly, Relators are not entitled to the requested extraordinary relief in mandamus.

{¶38} Ohio's Public Records Act, R.C. 149.43, requires a public office, upon request, to make public records available for inspection or to provide copies of the records within a reasonable period of time. R.C. 149.43(B)(1). A "public record" is a record "kept by any public office." R.C. 149.43(A)(1). Mandamus is an appropriate remedy by which to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6.

{¶39} Relators initially brought this suit to compel the City to respond to the Union's public-records request. The City eventually provided the records of the

investigation to the Union. This aspect of the case is therefore moot. *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8 ("In general, the provision of requested records to a relator in a public-records mandamus case renders the mandamus claim moot").

**{¶40}** The only issue raised by the Union in the amended verified complaint with respect to the public records request is its entitlement to statutory damages and attorneys' fees based upon the City's alleged failure to produce the records within a reasonable period of time. R.C. 149.43(B)(1) requires a public office or official to promptly prepare all responsive records "within a reasonable period of time." "Statutory damages may be awarded if the public record has not been provided promptly." *State ex rel. Cincinnati Enquirer v. Deters*, 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 22; R.C. 149.43(C)(2).

**{¶41}** The phrase "reasonable period of time" is not defined in R.C. 149.43, "but 'the determination of what is "reasonable" depends upon all the pertinent facts and circumstances.' " *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 16, quoting *Deters* at ¶ 23. When a public official makes records available for the first time after a mandamus suit is filed, but before a court issues an order, the court may sometimes be called upon to determine whether the official acted in bad faith. But that determination is relevant only to awards of attorney fees, R.C. 149.43(C)(3)(b)(iii), and court costs, R.C. 149.43(C)(3)(a)(ii), not to statutory damages. *State ex rel. Stuart v. Greene*, -- Ohio St.3d --, 2020-Ohio-3685, -- N.E.3d, --, ¶ 9.

**{¶42}** Although the City captions its pleading "ANSWER to Amended Complaint for Writ of Mandamus to Compel Compliance with R.C. 149.43 and [YCO] 163.63," the pleading argues that the public records request is moot, as the requested documents were provided. In the alternative, the City argues that Relators' public records request was fulfilled within a reasonable time period, based on the averments in the two affidavits attached to the pleading.

**{¶43}** A court may rely on the caption of a pleading when ruling on it, but also has the discretion to construe it based on its contents. *Carter-Jones Lumber Co. v. JCA Rentals, L.L.C.*, 7th Dist. Mahoning No. 12 MA 56, 2013-Ohio-863, ¶ 19. Because the

City argues that any delay in fulfilling the public records request was due to Holcomb's failure to return his amended statement to Grenga, based on the averments in the Grenga and Limbian affidavits, we construe that part of the answer to be a motion for summary judgment. We have previously observed:

> [A] motion to dismiss is a procedural tool which tests the sufficiency of the complaint, not the sufficiency of the evidence. Tests of the sufficiency of the evidence are handled utilizing motions for summary judgment under Civ.R. 56. It is permissible for a trial court to convert the Civ.R. 12(B)(6) motion to a motion for summary judgment, but it must do so using the parameters established by Civ.R. 56. Further, as this court has previously held, "where the motion to dismiss, which relies on evidence outside of the complaint, is granted without conversion and notification, the dismissal is reversible." *Scardina v. Ghannam*, 7th Dist. Mahoning No. 04-MA-81, 2005-Ohio-3315, at ¶ 18.

*Pfalzgraf v. Miley*, 7th Dist. Monroe No. 19 MO 0006, 2019-Ohio-4920, ¶ 13. Having construed the latter portion of the City's answer to be a motion for summary judgment, we are obligated to notify the parties as well as provide an opportunity to Relators to respond to the evidence presented by the City.

## CONCLUSION

{¶44} In summary, Relators do not have a clear legal right pursuant to section 163.63 of the Youngstown Codified Ordinances ("YCO") to the appointment of an independent, neutral investigator, and the City does not have a clear legal duty pursuant to YCO 163.63 to appoint such an investigator. Accordingly, the writ, to the extent that it is predicated upon the appointment of an independent, neutral investigator, is dismissed.

{¶45} The City seeks dismissal of the sole remaining issue – the timeliness of the City's response to the public records request – based on affidavits that are beyond the face of the amended verified complaint. As a consequence, we have construed the latter part of the City's pleading to be a motion for summary judgment.

**{¶46}** Accordingly, Relators shall file a response to the City's motion for summary within thirty days of the issuance of this memorandum opinion. A reply brief may be filed by the City in accordance with Ohio Civ.R. 6(C)(1).

Waite, J., concurring in part; dissenting in part.

**{¶47}** While I agree with my colleagues that the underlying writ of mandamus seeking appointment of an investigator must be dismissed, I respectfully dissent from the conclusion that the request for damages should not also be dismissed. According to R.C. 149.43(B)(1), public records must be provided "within a reasonable time." As noted by the majority, the term "reasonable time" is not defined, and this term has become a fact specific analysis in the law. It is clear, however, the requestor bears the burden of demonstrating that the public records request response was unreasonably delayed. *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 22, 2018-Ohio-5110, 123 N.E.3d 895, ¶ 19, *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 44.

**{¶48}** The following facts are already in this record and are relevant to this analysis. On February 28, 2020, Attorney Grenga informed Holcomb that his statement summary was complete and ready for his review and signature. (9/15/20 Answer to Amended Complaint, Grenga Aff.) Holcomb picked up the statement, however, he failed to return it with his signature. Attorney Grenga, still without Holcomb's signed statement, concluded the investigation and prepared the (incomplete) report for review on May 30, 2020. On June 3, 2020, Holcomb informed Attorney Grenga that he objected to portions of his statement summary, which had been in his possession since approximately February 28, 2020. Attorney Grenga instructed Holcomb to note his objections and requested changes on the statement and return it to her. Holcomb failed to do so. Attorney Grenga averred that she delayed release of the investigation report due to Appellant's failure to return his signed statement. On June 18, 2020, the Union sent a public records request for all correspondence related to the incident, including the investigative report. On August 24, 2020, the Union filed the instant action. At the time the action was filed, Holcomb still had not complied with Attorney Grenga's instruction to return the signed statement with his noted objections so that she could complete the report. Despite Holcomb's continued failure to comply, the records were released on August 31, 2020, one week after the action was filed.

**{¶49}** The Union acknowledges that Holcomb did not comply with Attorney Grenga's request. The Union argues, however, that Holcomb is not responsible for the

production of public records and that the City "could have provided the records regardless of Firefighter Holcomb's actions." (9/21/20 Amended Complaint, p. 9.) Attached to the amended complaint is a letter from the City of Youngstown to Holcomb's counsel. (9/21/20 Amended Complaint, Exh. 5.) In the letter, the City explained that the report had not been released as of that date due to Holcomb's failure to return his signed statement. The letter states that on May 30, 2020, Attorney Grenga prepared a draft of the investigation report without Holcomb's signed statement. However, on June 3, 2020, Holcomb contacted Attorney Grenga and noted his objection to portions of his statement summary, a summary he had received on February 28, 2020. "Attorney Grenga instructed Holcomb on what he would need to do in reference to this or any other disagreements he had with the statement summary. She directed Holcomb to review the summary statement and return it to her. Attorney Grenga, therefore, held off on releasing the investigation until Holcomb had reviewed and returned the statement summary." (9/21/20 Amended Complaint, Exh. 2.)

**{¶50}** Due to the filing of the instant action, the City released the report that it drafted on May 30, 2020 and noted that it "did not release the investigation previously out of an abundance of caution and a consideration of fairness to Holcomb's right to review and sign his statement summary, the City now releases the investigation due to the Union's filing of a Mandamus action against the City seeking its release." (9/21/20 Amended Complaint, Exh 5, p. 2.)

**{¶51}** Thus, the Union's own exhibit establishes that the City was prepared to complete and release the report months earlier, if Holcomb had provided his signed statement. As soon as Holcomb advised the City that he had objections or proposed changes to his statement, months after he initially received it, Holcomb was immediately advised how to note his objections or corrections in order to complete his statement. He does not dispute that he failed to take those steps. While Holcomb and his Union now claims that the City could have released the investigative report without his signed statement, it is apparent from the record before us that Holcomb understood Attorney Grenga was waiting for his signed statement in order to fully complete the report. Because Holcomb's own actions prevented the City from completing the report, based on

Case No. 20 MA 0089

the information already in this record it cannot be said that the City's delay was unreasonable.

**{¶52}** As the Union addressed all the facts necessary to fully decide this matter, especially in Exhibit 5 attached to their amended complaint, and the City responded to these in its answer to the amended complaint, there is no need to convert the request for damages into a motion for summary judgment. Based on the record here, sufficient evidence exists to dismiss the writ of mandamus in its entirety.


APPROVED:


CHERYL L. WAITE, JUDGE

**{¶53}** Costs taxed against Relator. Final order. Clerk to serve copies of this decision and judgment entry pursuant to the civil rules.


**JUDGE DAVID A. D'APOLITO**

**JUDGE GENE DONOFRIO**

**JUDGE CHERYL L. WAITE**