[Cite as *Paramount Advantage v. Ohio Dept. of Medicaid*, 2021-Ohio-4180.]

| | |
|---|---|
| PARAMOUNT ADVANTAGE | Case No. 2021-00262PQ |
| Requester | Special Master Jeff Clark |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| OHIO DEPARTMENT OF MEDICAID | |
| Respondent | |

{¶1} This action is filed under R.C. 2743.75, which provides an expeditious and economical procedure to enforce the Ohio Public Records Act, R.C. 149.43. On April 12, 2021, requester Paramount Advantage, an unsuccessful applicant in a managed care organization procurement process, made a public records request to respondent Ohio Department of Medicaid (ODM)

> to inspect and copy public records [in any format] that fall into any of the following categories:
>
> 1. Documents reflecting the scoring performed by the Ohio Department of Medicaid ("ODM"), as to all Plan Applicants, including but not limited to: (a) who performed the scoring; (b) the score cards; (c) score tabulations; (d) the process(es) applied to scoring; (e) assumptions made in scoring; (f) considerations taken in scoring; and (g) all other matters related to the managed care procurement scoring process of applications (the "Plan Applications") that ultimately resulted in the Managed Care Procurement Award announced on April 9, 2021 (the "Procurement Process/Decision") related to RFA ODMMR-2021-2024 (the "RFA");
>
> 2. All Plan Applications received by ODM by all Applicants;
>
> 3. All recordings, video and/or audio, of oral presentations by all Plan Applicants;
>
> 4. Documents reflecting all ODM participants in oral presentations by Plan Applicants, including those participating in listen or observing mode and a list of those who scored the video portion of the process;

5. Documents reflecting ODM internal communications between/among Plan Application reviewers/scorers;

6. Documents reflecting instructions to potential applicants outlining the RFA process as well as any follow-up questions from and responses to potential applicants related to the RFA process;

7. Documents reflecting the decision to not award any contracts to an application for only one or two regions;

8. Documents reflecting communications between the ODM and United Healthcare Community Plan of Ohio, Inc. related to the Procurement Process/Decision;

9. Documents reflecting communications between ODM and Humana Health Plan of Ohio, Inc. related to the Procurement Process/Decision;

10. Documents reflecting communications between ODM and Molina Healthcare of Ohio, Inc. related to the Procurement Process/Decision;

11. Documents reflecting communications between ODM and AmeriHealth Caritas Ohio, Inc. related to the Procurement Process/Decision;

12. Documents reflecting communications between ODM and Anthem Blue Cross and Blue Shield related to the Procurement Process/Decision;

13. Documents reflecting communications between ODM and CareSource Ohio, Inc. related to the Procurement Process/Decision;

14. Documents reflecting communications between ODM and Buckeye Community Health Plan related to the Procurement Process/Decision;

15. Documents reflecting communications between ODM and Aetna Better Health of Ohio related to the Procurement Process/Decision;

16. Documents reflecting communications between ODM and Medical Mutual of Ohio related to the Procurement Process/Decision;

17. Documents reflecting communications between ODM and Ohio Employee Health Partnership related to the Procurement Process/Decision; and

18. Documents reflecting communications between ODM and any person or entity who/that was not an Applicant related to the Procurement Process/Decision.

(Complaint, Exh. B.) The same day, ODM responded that it was in receipt of and working to fulfill the requests (*Id.*, Exh. C.) On April 14, 2021, ODM sent a written response to each request and attached responsive records. (*Id.*, Exh. D.) On April 15 and 20, 2021, ODM produced additional responsive documents. (*Id.*, Exh. E, F.) In a letter dated April 19, 2021, Paramount made a second public records request for:

1. All Records (as defined in R.C. 149.43) related to a problem in the enrollment of Medicaid members into the Paramount Advantage plan as reflected in the data shared in the Paramount/ODM Data Meeting presentation dated August 29, 2019, and attached hereto as an Exhibit;

2. All Records related to problems with the enrollment of Medicaid members into the Paramount Advantage plan including but not limited to problems regarding (a) deceased members being retroactively enrolled, (b) ABD members being placed in incorrect rate cells, (c) MyCare members assigned to Paramount Advantage, and (d) extension members being moved to CFC;

3. All Records related to a problem with the algorithm that assigned Medicaid members among the managed care plans resulting in a disproportionately large population of high cost, high risk members enrolled in Paramount Advantage;

4. All Records related to the reimbursement to Paramount Advantage by ODM of approximately $57 million in connection with the enrollment or algorithm issues referenced in Requests 1, 2, and 3;

5. All Records reflecting communications between ODM and Aetna Better Health related to the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4;

6. All Records reflecting communications between ODM and Buckeye Community Health Plan related to the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4;

7. All Records reflecting communications between ODM and Caresource related to the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4;

8. All Records reflecting communications between ODM and Molina Healthcare of Ohio related to the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4;

9. All Records reflecting communications between ODM and United Healthcare Community Plan of Ohio, Inc. related to the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4;

10. All Records reflecting communications between ODM and Accenture related to the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4;

11. All Records reflecting communications between ODM and Milliman related to the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4;

12. All Records reflecting communications between ODM and any outside consultant or advisor related to the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4; and

13. All Records related to any disciplinary or threatened disciplinary actions against any ODM employee in connection with the enrollment, algorithm, and payments issues referenced in Requests 1, 2, 3, and 4.

(*Id.*, Exh. H.) On April 23 and May 4, 2021, ODM sent an email and letter acknowledging receipt of the second request. (*Id.*, Exh. I, J.)

{¶2} On May 7, 2021, Paramount filed a complaint pursuant to R.C. 2743.75 alleging that ODM had denied access to public records in violation of R.C. 149.43(B). The case was referred to mediation. On June 28, 2021, the special master denied the motion of UnitedHealthcare Community Plan of Ohio, Inc. to intervene. On July 13, 2021, the mediator entered an order reporting that

as a result of mediation, the requests set forth in the letter of April 12, 2021, attached to the complaint numbered 1 (scoring notes only), 5, and 8

through 18 remain unresolved: all other matters have been resolved or are otherwise not disputed.

On July 29, 2021, ODM filed a combined response to the complaint and motion to dismiss (Response). On August 26, 2021, Paramount filed a reply.

**Burden of Proof**

{¶3} The Ohio Public Records Act, R.C. 149.43, is construed liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 6. The requester in an enforcement action under R.C. 2743.75 bears an overall burden to establish a public records violation by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). The requester bears a burden of production "to plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 33.

**Motion to Dismiss**

{¶4} In order to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the claimant can prove no set of facts warranting relief after all factual allegations of the complaint are presumed true and all reasonable inferences are made in claimant's favor. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). As long as there is a set of facts consistent with the complaint that would allow the claimant to recover, dismissal for failure to state a claim is not proper. *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 10.

**Remaining Claims**

{¶5} The parties agree that among the requests of April 12, 2021, only Request Nos. 1 (scoring notes only), 5, and 8 through 18 remain unresolved. The special master accordingly finds that Paramount's claims for production of records based on Request Nos. 1 (other than scoring notes), 2-4, and 6-7 are moot.

**Analysis**

{¶6} ODM asserts that the remaining portion of Request No. 1 has been satisfied by production of the scoring notes to Paramount in collateral litigation. ODM further asserts that all requests set forth in the letter of April 19, 2021, have been satisfied. (Response at 3.) Paramount denies both of these assertions.

{¶7} ODM further argues that all of Paramount's non-moot claims for production fail to state a claim for which relief may be granted because each request on its face is ambiguous, overly broad, and does not reasonably identify the specific records sought, or seeks personal notes and other information that are not "records."

**Scoring Notes/Scoring Cards**

1. Suggestion of Mootness

{¶8} In an action to enforce R.C. 149.43(B), a public office may produce requested records prior to the court's decision and thereby render the claim for production moot. *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 22. ODM states that through discovery in collateral litigation it has provided Paramount with the same scoring notes that are sought in Request No. 1. (Response at 5-6, Exh. 1 – Garris Aff.) Paramount admits receipt of these documents. (Reply at 3.)

{¶9} A relator's claims are moot insofar as they request records which he has obtained through collateral litigation either before or during his public records enforcement action. *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 381-382, 700 N.E.2d 12 (1988) (relator obtained requested records from two other actions to which he

was party).[1] Where the records so provided are identical, mootness turns on *whether* the records were provided, not *how* they were provided. The special master finds that Paramount's request for scoring notes in Request No. 1 is moot.

    2.  Claim that Moot Issue is "Capable of Repetition Yet Avoiding Review"

{¶10} Paramount asserts that its request for production of process scoring notes involves exceptional circumstances where the time between denial of the notes and the award of a contract is too short in duration to be fully litigated before the award is made, citing *State ex rel. Dispatch Printing Co. v. Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, N.E.2d 314, ¶ 10–13. (Reply at 4-5.) Paramount avers there is a reasonable expectation that it will be subject to the same action again. (*Id.*) ODM counters that Paramount demonstrates no reasonable expectation it will have occasion to request scoring notes from ODM in a future procurement process, and that any such instance would be subject to review either in this court or in mandamus. (Response at 6.)

{¶11} Public records issues have been found capable of repetition yet avoiding review in, for example, *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 662 N.E.2d 334 (1996); *State ex rel. Wadd v. Cleveland*, 81 Ohio St.3d 50, 52, 689 N.E.2d 25 (1998); *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 29-31; *State ex rel. Ohio Republican Party v. Fitzgerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47 N.E.3d 124, ¶ 15-17; and *State ex rel. Cincinnati Enquirer v. Ohio DOC, Div. of State Fire Marshal*, 2019-Ohio-4009, 145 N.E.3d 1232, ¶ 8-9 (10th Dist.). The issues in these cases were clearly likely to repeat because the records involved were fairly standardized and frequently requested, e.g., 9-1-1 tapes, traffic accident reports, dashcam video, key-card-swipe data, and fire incident reports.

---

[1] This is not to say that a public office cannot provide multiple copies, only that it may decline to do so. If a requester is confused as to their rights, voluntary provision of additional copies can equitably advance the purposes of the Act while reducing the chance of litigation.

{¶12} Paramount provides no evidence that it will make future requests from ODM for scoring notes made under functionally identical procurement processes using the same time frames and challenge options, or that scoring cards/notes will always be used. The circumstances in this case more closely resemble those in *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 729 N.E.2d 1182 (2000) where the Court found no showing that the respondent's ad hoc time between creation of draft agreements and final decisions was always so short as to evade review. *Id.* at 230-231. The special master finds that Paramount has not shown that exceptional circumstances exist in the present case or that the remedy for the challenged denial of withholding notes will be too short in its duration to be fully litigated before the granting of a contract.

<u>Non-Records</u>

{¶13} Notes may not constitute "records"[2] subject to the Public Records Act if they are (1) kept as personal papers, not official records; (2) kept for the employee's own convenience; and (3) other employees did not use or have access to the notes. *State ex. rel. Cranford v. Cleveland*, 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 18. Notes taken by public officials for their convenience as interviewers, evaluators, or assessors, and subsequently used in deliberative processes that result in written summaries or decisions, generally do not constitute "records" of the public office. *Cranford* at ¶ 14-22 (predisciplinary conference notes); *Barnes v. Columbus*, 10th Dist. Franklin No. 10AP-637, 2011-Ohio-2808, ¶ 9-27 (civil service commission assessors' notes); *State ex rel. Murray v. Netting*, 5th Dist. Guernsey No. 97-CA-24, 1998 Ohio App. LEXIS 4719 (police chief interviewers' notes). While such notes are often destroyed when of no further use to the drafter, retaining them in public office files does not automatically make them "records." *Cranford* at ¶ 21; *Silberstein v. Montgomery Cty.*

---

[2] "Records" includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office. R.C. 149.011(G)

*Cmty. College Dist.*, 2nd Dist. Montgomery No. 23439, 2009-Ohio-6138, ¶ 54, 67. Nor do personal notes lose their non-record status merely because they contain information that is not transferred to an official report. *State ex rel. Summers v. Fox*, 163 Ohio St.3d 217, 2020-Ohio-5585, 169 N.E.3d 625, ¶ 65-66.

{¶14} ODM asserts that scoring cards as used in this instance contained only personal notes that did not serve as "records." ODM submitted affidavits from the evaluators who served in this procurement process. Each attested they took personal notes regarding the procurement applications on an Individual Evaluation Guide form for the purpose of assisting their memories when they later met by teleconference for "consensus meetings." (Response, Exhibits 2-8 at ¶ 6-11.) The evaluators kept the notes at their homes, did not share them with each other or anyone at ODM, and at the conclusion of the process delivered them to ODM's outside counsel. (Id. at ¶ 9,12-13.)

{¶15} Paramount counters that training materials for the evaluators stated they would use the scoring notes to "document" their individual ratings and of applicants, and that evaluators verbally shared the contents of their notes at consensus meetings. (Reply at 6.) However, this evidence is not inconsistent with ODM's assertion that the evaluators complied with their training to take notes only for their personal use as individual assessors, for their convenience in recalling their observations as to various applicants, and to secure the notes from use or access by other employees.

{¶16} Based on the evidence before the court, the special master concludes that Paramount has not met its burden to show by clear and convincing evidence that the scoring notes/cards were "records" of ODM.

**No Cause of Action for Modified Requests**

{¶17} The remaining defense is that all the original requests in the letters of April 12 and April 19, 2021 were fatally ambiguous or overly broad, or otherwise failed to reasonably identify the records sought. In support of its assertion that Requests Nos. 5, 8-17, and 18 were *not* improperly ambiguous or overly broad, Paramount invites the

court to determine the matter based on revisions it made to the requests' language during mediation. (Reply at 7-9.) The special master notes first there is no indication ODM has waived the privilege and confidentiality provisions of R.C. 2710.03 and .07 applying to all mediations conducted by this court. R.C. 2710.02(A)(1); L.C.C.R. Rule 22(A) and (G).

{¶18} Even were language revised in mediation properly before the court, no revision of a request during litigation relates back to the complaint. There can be no cause of action based on failure of an office to provide records in accordance with R.C. 149.43(B) without a specific public records request having been made and denied prior to the complaint. *See Strothers v. Norton,* 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, ¶ 14; *State ex rel. Bardwell v. Ohio Atty. Gen.*, 181 Ohio App.3d 661, 2009-Ohio-1265, 910 N.E.2d 504, ¶ 5 (10th Dist.). Accordingly, the recommendations for resolution of this claim shall be based only on the requests made prior to the complaint.

**Ambiguous or Overly Broad Requests**

{¶19} *Gupta v. Cleveland*, Ct. of Cl. No. 2017-00840PQ, 2018-Ohio-3475, summarizes the burden and standards regarding ambiguous and overly broad public records requests:

> A person may request public records regardless of intended use, including use in civil litigation. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564. However, the standards required for a proper public records request are distinctly different from the standards for civil discovery instruments. A public records requester must reasonably identify the particular, existing records sought, and any request that is ambiguous or overly broad may be denied. R.C. 149.43(B)(2). Thus, a broad discovery-style demand to conduct an officewide search for records containing information relevant to a pending action is often improper when submitted as a public records request. *State ex rel. Thomas v. Ohio State Univ.* 71 Ohio St.3d 245, 246, 1994-Ohio-261, 643 N.E.2d 126 (1994), cited with approval in *State ex rel. Shaughnessy v. Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, 76 N.E.3d 1171, ¶ 10; *State ex rel. Thomas v. Ohio State Univ.* 70 Ohio St. 3d 1438, 638 N.E.2d 1041 (1994).

Regarding the specificity required of public records requests, R.C. 149.43(B)(2) provides:

> If a requester makes an ambiguous or overly broad request or has difficulty in making a request for copies or inspection of public records under this section such that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties.

Thus, "it is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *State ex rel. Zidonis v. Columbus State Community College*, 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 21. A public office may deny a request that fails to meet this standard. Judicial determination of whether the office has properly denied the request is based on the facts and circumstances in each case, *Zidonis* at ¶ 26.

The courts recognize several ways that a request may be overly broad. First, a request for an entire category of records is overly broad and unenforceable:

> [A] "records request is not specific merely because it names a broad category of records listed within an agency's retention schedule." * * *. For example, the retention schedule for the administrative records of Ohio courts includes broad categories like "correspondence and general office records," "employee history and discipline records," "fiscal records," and "payroll records." Sup.R. 26.01(F), (J), (K), and (M). Requests for each of these record categories without any temporal or content-based limitation would likely be overbroad even though the categories are so named in the schedule.

*Zidonis* at ¶ 21, 26. Even with some temporal limitation, a request to produce an entire category of records may remain overly broad. *Zidonis* at

¶ 21 (all complaint files and litigation files from within six years of when files were last active). Fundamentally,

> In identifying records for purposes of presenting a viable request, the Public Records Act "does not contemplate that any individual has the right to a complete duplication of voluminous files kept by government agencies."

(Citations omitted.) *Id. Accord State ex rel. Dehler v. Spatny*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, ¶ 1-3 (prison quartermaster's orders/receipts for clothing for seven years); *Strothers v. Keenon, supra*, at ¶ 29 (all personnel records, without time frame, subject matter, or specific employee names); *Salemi v. Cleveland Metroparks*, 8th Dist. Cuyahoga No. 100761, 2014-Ohio-3914, ¶ 26 (checks, agreements, meeting minutes, emails, and letters that relate to marketing of golf course); *State ex rel. McElroy v. Polito*, 8th Dist. Cuyahoga No. 77042, 1999 Ohio App. LEXIS 5683 (November 30, 1999) (marriage license applications from a specified year, where no collection or index of such records existed).

　　　* * *

A public records request is also unenforceable if it is too voluminous, vague or indefinite to be properly acted on by the records holder. *State ex rel. Dehler v. Spatny*, 11th Dist. No. 2009-T-0075, 2010-Ohio-3052, ¶ 4, 18, *aff'd*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831. Such a request may be both overly broad and ambiguous at the same time:

> A general request, which asks for everything, is not only vague and meaningless, but essentially asks for nothing. At the very least, such a request is unenforceable because of its overbreadth. At the very best, such a request is not sufficiently understandable so that its merit can be properly considered.

*State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 756, 577 N.E.2d 444 (10th Dist.1989) (all traffic accident reports). A request may be denied as ambiguous if the public office cannot reasonably identify what public records are being requested. R.C. 149.43(B)(2). Indeed, without sufficient specificity for a court to order clear terms of compliance with a request, the court cannot later enforce alleged non-compliance.

*Id.* at ¶ 22-24, 26.

**Remaining April 12, 2021 Requests**

Request No. 1

{¶20} Request No. 1 begins with broad language seeking "[d]ocuments reflecting the scoring performed by [ODH], as to all Plan Applicants." (Complaint, Exh. B.) This language standing alone as a request would be ambiguous and overly broad. However, Paramount named the individual plan applicants in a footnote, and then continued with a more specific document request: "including * * * (b) the score cards," with identification of the ODM RFA for which the score cards were used. This embedded request reasonably identifies the records sought, as evidenced by ODM's ability to attest that the identical records were provided to Paramount in collateral litigation. (Response, Exh. 1 – Garris Aff. at ¶ 4-6.) The special master concludes that Request No. 1 was not ambiguous or overly broad.

Request No. 5

*Documents reflecting ODM internal communications between/among Plan Application reviewers/scorers.*

{¶21} Requests No. 5 makes a broad discovery-style request rather than reasonably identifying the particular records sought. It is not limited by date range or communication format. It does not provide the names or addresses of correspondents. It does not exclude personal communications and is not limited to communications related to the scoring process. Even if requests identify individual correspondents, a request for all correspondence without specifying subject matter may render the request overly broad. *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 17, 19. *Compare State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 22, 2018-Ohio-5110, 123 N.E.3d 895, ¶ 23-27 (A request for email is not overly broad if it is reasonably circumscribed by time period, subject matter, author or sender/recipient, and the like). *See State ex rel. Bristow v. Baxter*, 6th Dist. Erie Nos. E-

17-060, E-17-067, E-17-070, 2018-Ohio-1973, ¶ 11-16; *Patton v. Univ. of Akron*, Ct. of Cl. No. 2017-00820PQ, 2018-Ohio-1555, ¶ 2, 9-10.

{¶22} The vague phrase "[d]ocuments *reflecting"* communications sweeps in not only the communications themselves, but also any ODM records referencing or resulting from the communications in any way. The request is framed in language of expansion and research rather than identification and clarity. It requires ODM to comb through all office records rather than a reasonably specified location within the office. *Zidonis* at ¶ 21, 26; *State ex rel. Dillery v. Icsman*, 92 Ohio St.3d 312, 314, 750 N.E.2d 156 (2001). *Accord State ex rel. Chasteen v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 13-AP-779, 2014-Ohio-1848, ¶ 23-27; *Decrane v. Cleveland*, Ct. of Cl. No. 2018-00358PQ, 2018-Ohio-3651, ¶ 1, adopted by *DeCrane v. Cleveland*, Ct. of Cl. No. 2018-00358PQ, 2018-Ohio-4363, cited with approval in *Barnes v. Cleveland Div. of Records Admin.*, 2021-Ohio-212, 167 N.E.3d 51, ¶ 43 (8th Dist.). The special master finds that Request No. 5 is ambiguous, overly broad, and fails to reasonably identify the records sought.

<u>Requests Nos. 8-18</u>

*Documents reflecting communications between ODM and* [each plan applicant, or "any person or entity who/that was not an Applicant"] *related to the Procurement Process/Decision*

{¶23} These are again discovery-style requests rather than descriptions reasonably identifying particular records sought. They are not limited by date range or communication format. They do not exclude personal communications. The vague phrase "[d]ocuments *reflecting"* communications sweeps in not only the communications themselves, but also ODM records referencing or resulting from the communications in any way. The request is framed in language of expansion and research rather than identification and clarity. It requires ODM to comb through all office records that in any way "reflecting" communications, e.g., electronic metadata.

{¶24} These requests impermissibly require ODM to search through all communication "between ODM and [named applicants]." Since "ODM" consists of thousands of individuals using various work and personal physical addresses, telephone numbers, email addresses, and social media, a demand that the department search all "communications" of those individuals without narrowing the request by particular officers, employees, contractors, and the like; and/or communication format; and/or date range; and/or clear topic specification or search terms, is manifestly ambiguous and overly broad. Request No. 18 compounds this problem by requesting communications between "ODM" and any outside person or entity. A request is ambiguous and overly broad when it identifies correspondents only as belonging to titles, groups, or categories for which research is required to establish membership. *State ex rel. Oriana House, Inc. v. Montgomery*, 10th Dist. Franklin Nos. 04AP-492, 04AP-504, 2005-Ohio-3377, ¶ 9, overturned on other grounds, 107 Ohio St.3d 1694, 2005-Ohio-6763, 840 N.E.2d 201.

{¶25} The special master finds that Requests Nos. 8-18 are ambiguous, overly broad, and fail to reasonably identify the records sought.

**April 19, 2021 Requests**

{¶26} ODM asserts that "[a]ll requests from the April 19, 2021 request have been satisfied. *See* July 15, 2021 Entry," and asserts no other defense to the requests made in the April 19, 2021 letter. (Response at 3.) However, the mediator's July 15, 2021 Entry cannot itself waive or determine a claim, and Paramount expressly denies that it has stipulated to satisfaction of any April 19, 2021 request.

{¶27} In this special statutory action, the special master may, *sua sponte*, consider whether a complaint states a claim for which relief may be granted. "Upon the recommendation of the special master, the court of claims on its own motion may dismiss the complaint at any time." R.C. 2743.75(D)(2). On review of the letter of April 19, 2021, each request seeks records created on or after July 1, 2018, in any format,

that falls into thirteen separately listed categories of records "related to" various "problems," reimbursement of monies in connection with "enrollment or algorithm issues," and "reflecting communications between ODM" and the other applicants "*related to* the enrollment, algorithm, or payment issues referenced in Requests 1, 2, 3, and 4." (Emphasis added.) (Complaint, Exh. H.)

{¶28} The April 19, 2021 requests seek records covering a period of almost three years for records ambiguously described as "related to" various problems, events and communications that are in turn ambiguously framed and overly broad in scope. Communications between "ODM" and seven applicant entities are requested without any individual's name or address, and unlimited by date range. Request No. 12 even more ambiguously requests communications with "any outside consultant or advisor related to" certain issues. Request No. 13 requests research to find "all records "related to any disciplinary or threatened disciplinary actions against any ODM employee in connection with" the same issues, again without names or date range.

{¶29} By the same analysis applied to April 12, 2021 Requests Nos. 2-18, and based on the case law cited in *Gupta, supra*, the special master finds that the requests contained in the letter of April 19, 2021 are improperly ambiguous; overly broad; request research; do not describe the records sought with reasonable specificity; and are therefore unenforceable.

### Opportunity to Revise an Ambiguous or Overly Broad Request

When denying an ambiguous or overly broad request, a public office must

provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties.

R.C. 149.43(B)(2). Although ODM promptly advised Paramount that many of the requests were overly broad, it had not formally denied all requests prior to litigation. Under these circumstances, courts have encouraged parties to persevere to achieve a

mutually acceptable resolution of currently deficient records requests. *See State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 14-19. The General Assembly provides statutory tools to optimize the scope, speed, format, economy, and delivery of public records. *See* R.C. 149.43(B)(2), (3), (5), (6), (7) and (9). To its credit, Paramount demonstrates a willingness to amend requests. (Reply at 7-9.) Likewise, ODM has endeavored to satisfy requests that it has found sufficiently specific to identify the records sought. The parties are encouraged to cooperate fully in negotiating any future revision of these requests.

**Claim of Untimely Production**

{¶30} The Public Records Act requires that a public office "shall make copies of the requested public record available to the requester * * * within a reasonable period of time." R.C. 149.43(B)(1). Whether a public office has provided records within a reasonable period of time depends upon all the pertinent facts and circumstances of the case. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11-12. The requester bears the burden of demonstrating that a public office's response was unreasonably delayed. *Id.*

{¶31} Paramount states that its requests were time-sensitive in connection with its desire to challenge the results of the procurement process. However, the time allowed for response to a public records request is generally independent of a requester's intended use of the records. R.C. 149.43(B)(4). Certain public records requests, requesters, and records are subject to conditions of special limitation or entitlement, but Paramount alleges no such conditions in this matter.

{¶32} ODM provided numerous responsive records in the roughly three weeks between Paramount's requests and the filing of the complaint. Because the requests themselves were numerous, voluminous, diverse, and required legal review, the special master finds Paramount has not proven that the period between the requests and ODM's thus-far compliant production of records was an unreasonable period of time

under the circumstances. See *Shaughnessy v. Cleveland*, 149 Ohio St.3d 612, 2016-Ohio-8447, ¶ 3-23; *Strothers v. Norton*, 131 Ohio St.3d 359, 2012-Ohio-1007, 965 N.E.2d 282, ¶ 21-23.

**Conclusion**

{¶33} On consideration of the pleadings and attachments, the special master recommends the court find respondent provided responsive records rendering seven of requester's claims moot within a reasonable period of time. The special master recommends the court dismiss the remaining claims for production as either moot, requests for non-records, or ambiguous and/or overly broad and therefore unenforceable. It is recommended that costs be assessed to requester.

{¶34} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFF CLARK
Special Master

**Filed October 14, 2021**
**Sent to S.C. Reporter 11/29/21**