**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Harris v. Watson*, Slip Opinion No. 2026-Ohio-508.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-508

THE STATE EX REL. HARRIS *v.* WATSON, WARDEN, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Harris v. Watson*, Slip Opinion No. 2026-Ohio-508.]**

*Mandamus—Public-records requests—Writ granted for requested documents that remain unaccounted for—Writ denied as moot as to documents already provided—Statutory damages awarded.*

(No. 2024-1089—Submitted April 22, 2025—Decided February 18, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.  KENNEDY, C.J., concurred in part and dissented in part, with an opinion.  FISCHER, J., dissented.

**Per Curiam.**

{¶ 1} In this original action, filed July 31, 2024, relator, Lionel Harris, an inmate at the North Central Correctional Complex ("NCCC"), requests a writ of mandamus ordering respondents, Tom Watson, T. Buckner, Dave Cedar, and the NCCC library, to produce public records he requested by electronic kite.[1] Watson is the warden of NCCC, Buckner works in the commissary there, and Cedar is an NCCC library supervisor. Harris also requests statutory damages, court costs, and—alleging destroyed records—a civil forfeiture under R.C. 149.351.

{¶ 2} Respondents filed an answer and a motion for judgment on the pleadings. We granted that motion as to ten of Harris's public-records requests and denied the motion as to four other requests. We sua sponte granted an alternative writ, setting a schedule for the submission of evidence and briefs, 2024-Ohio-4942, which both parties have filed. Additionally, Harris has filed a "motion to strike [the] false affidavit" of the warden's assistant, a request for sanctions against respondents' counsel, and a motion for us to take judicial notice of our caselaw, NCCC records-retention requirements, and certain documents in the record. Harris later filed a motion to partially withdraw his "motion to strike [the] false affidavit."

{¶ 3} For the reasons explained below, we deny Harris's "motion to strike [the] false affidavit," deny his request for sanctions, deny his motion for judicial notice, and grant his motion to partially withdraw his motion to strike the affidavit. We grant a writ of mandamus regarding some of the requested records, grant a limited writ compelling respondents to produce other requested records or certify that no responsive records exist, deny the writ as to the remaining requested records, and award court costs and $3,000 in statutory damages to Harris. Additionally, we dismiss Harris's request for a civil forfeiture under R.C. 149.351.

---

1. A kite is a communication between an inmate and a member of prison staff. *State ex rel. Martin v. Greene*, 2019-Ohio-1827, ¶ 3, fn. 1.

## I. FACTS AND PROCEDURAL HISTORY
### A. Public-Records Requests and Responses

{¶ 4} On July 5, 2024, Harris sent an electronic kite ("Exhibit A") to the NCCC commissary, requesting paper copies of (1) a commissary receipt for the first week of May 2024, (2) a June 2024 response from Buckner to an unnumbered kite Harris had previously sent, (3) any documentation demonstrating which particular staff member took possession of or was provided with Harris's vending card in May or June 2024, and (4) "the NCCC rules regarding an inmate's eligibility and procedures to purchase, possess, re-load and receive a refund regarding [vending] cards." Buckner responded to Harris's kite as though Harris had asked a question about an underlying problem regarding obtaining his vending card rather than the requested documentation of the card's handling. Buckner did not substantively respond to Harris's records requests.

{¶ 5} On July 6, 7, and 8, 2024, Harris sent the NCCC library multiple kites ("Exhibits B through K") requesting paper copies of various Ohio Department of Rehabilitation and Correction ("ODRC") policies. We granted respondents' motion for judgment on the pleadings as to Harris's claims based on these public-records requests. 2024-Ohio-4942.

{¶ 6} On July 9, 2024, Harris sent the NCCC library an electronic kite ("Exhibit L") requesting paper copies of the library sign-in sheets and the LexisNexis sign-in sheets for the morning and afternoon sessions of June 20, 21, and 25, 2024. A library employee responded: "Feel free to come to the library to obtain the needed sign-in sheets. I will have to white out or cover any [incarcerated persons'] full names, and their number (or any other identifying information.)."

{¶ 7} Later that day, Harris sent the library another electronic kite ("Exhibit M"), requesting additional library sign-in sheets and LexisNexis sign-in sheets for June 26 through 28, 2024, and July 8, 2024. The library employee responded that staff was unable to locate the sign-in sheets for June 15 through June 30 other than

two items from June 24 and 25.  The employee further responded, "I was also able to locate all of the requested documents from July 8th.  6/24- NCCC Library Print Schedule 6/25—Sign In for Copies page 7/8—all requested documents[.]  We will continue to look for all missing documents."

{¶ 8} Finally, on July 10, 2024, Harris sent the library an electronic kite ("Exhibit N") following up on his previous public-records requests for library sign-in and LexisNexis sign-in sheets.  He also requested paper copies of the employee-visit records for June 24 through July 7, 2024.  The staff member reiterated that staff would continue to look for all missing documents, but the response did not specifically acknowledge the new request for paper copies of the employee-visit records.

**B.  Letter from Respondents' Counsel to Harris**

{¶ 9} On August 19, 2024—almost three weeks after Harris filed this action—respondents' counsel wrote Harris, providing an additional response to his public-records requests.  Counsel noted that the policies requested in Exhibits B through K are all preloaded on and available to Harris on his NCCC-issued electronic tablet.  Nevertheless, counsel noted the cost for printing copies of each requested policy if Harris wanted to receive paper copies of them.

{¶ 10} Respondents' counsel also wrote that respondents had been unable to find the requested sign-in sheets.  Counsel stated that if responsive records were found, respondents would provide them to Harris at a cost of five cents per page.

{¶ 11} Along with the letter, respondents' counsel sent Harris the NCCC rules regarding vending-card eligibility, which are responsive to the fourth item listed in Exhibit A.  Counsel related respondents' belief that there were no public records responsive to the third item requested in Exhibit A—documentation demonstrating which staff member took possession of Harris's vending card—because Harris was in "segregation/TPU [temporary protective unit]" when the card would have been delivered on May 10.  Counsel added that NCCC was still

searching for any records of delivery after Harris was released from that housing. Counsel did not provide records responsive to the first and second items requested in Exhibit A.

### C. Procedural History

**{¶ 12}** Both parties have filed evidence. Harris's evidence includes copies of the four kites at issue and the August 19, 2024 letter from respondents' counsel. Respondents submitted affidavits from Mary Van Buskirk, the warden's assistant; a case manager; and a unit manager.

**{¶ 13}** Both parties have submitted merit briefs. Harris filed a document entitled "second status update" on the deadline for filing his reply brief, and we construe it as a reply brief to the extent that Harris makes arguments in it.

## II. ANALYSIS

### A. Harris's Motions

*1. Harris's motion to partially withdraw his "motion to strike false affidavit"*

**{¶ 14}** We consider Harris's unresolved motions out of order for ease of analysis, beginning with his motion to partially withdraw his motion to strike Van Buskirk's "false" affidavit. In his motion to strike, Harris had moved to strike the entirety of—or, alternatively, certain paragraphs from—Van Buskirk's affidavit, which was submitted by respondents. In this motion, Harris seeks to withdraw his request to strike the assertion in paragraph No. 15 of Van Buskirk's affidavit that "[a]s of the date of this affidavit, items [responsive to the public-records requests admitted as Exhibits] A, L, M, & N are available upon payment of the $0.05 per page copy costs." Harris concedes in his motion to withdraw that Van Buskirk's statement in paragraph No. 15 is not false.

**{¶ 15}** Respondents agree that Harris should be permitted to withdraw that part of his motion to strike. We grant Harris's motion to withdraw and will not consider the request made in his motion to strike paragraph No. 15 of Van Buskirk's affidavit.

*2. Harris's "motion to strike false affidavit" and request for sanctions*

**{¶ 16}** Harris moves to strike the rest of Van Buskirk's affidavit, which was submitted by respondents.  In the alternative, Harris moves to strike paragraph Nos. 7 and 14 of the affidavit.

**{¶ 17}** In paragraph No. 7 of Van Buskirk's November 1, 2024 affidavit, she attests: "Inmate Harris has been repeatedly informed that paper copies of his public records requests, including but not limited to all policy and procedures, institutional rules, kites, grievances and other documents could be made for a nominal copy cost."  Harris alleges that paragraph No. 7 is false.  He also contends that her response is hearsay and could not have been made based on her personal knowledge.

**{¶ 18}** Respondents counter that paragraph No. 7 of Van Buskirk's affidavit is based on her personal knowledge in that she is familiar with NCCC's internal policies and procedures given her position.  In her affidavit, Van Buskirk attests that as the warden's assistant, she is personally involved in coordinating responses to inmates' public-records requests and she interacts with outside counsel to fulfill them.

**{¶ 19}** "Affidavits shall be made on personal knowledge, setting forth facts admissible in evidence, and showing affirmatively that the affiant is competent to testify to all matters stated in the affidavit."  S.Ct.Prac.R. 12.06(A).  "[P]ersonal knowledge can be inferred from the nature of the facts in the affidavit and the identity of the affiant."  *State ex rel. Lanham v. DeWine*, 2013-Ohio-199, ¶ 15.  In *Lanham*, we found that an assistant attorney general had sufficient knowledge of the internal procedures and workings of the attorney general's office such that her statements regarding the contested documents were made on personal knowledge. *Id.* at ¶ 16.

**{¶ 20}** Harris submitted into evidence the letter that respondents' counsel sent him on August 19, 2024.  In that letter, counsel informed Harris that he could

obtain paper copies of the requested policies and procedures and informed him of the costs for copies of them. Van Buskirk avers that she interacts with outside counsel in responding to public-records requests. We may infer, therefore, that Van Buskirk had knowledge of counsel's statement regarding costs for paper copies in his August 19 letter, which was sent to Harris before Van Buskirk made her affidavit. Further, given her position, Van Buskirk would have been familiar with other communications informing inmates of such public-records policies and potentially conveying that paper copies of requested records could be made for a nominal copying cost. Therefore, Harris has not shown that paragraph No. 7 of Van Buskirk's affidavit is not based on her personal knowledge.

{¶ 21} Nor has Harris shown that the statement in paragraph No. 7 of Van Buskirk's affidavit regarding Harris's being informed about costs for paper copies is false. Although the statement is different from what Harris was told in response to his kites that were attached as Exhibits B through K to his complaint, he did not address those kites to Van Buskirk. The evidence that Harris submitted shows only that he received a different response from other NCCC staff members. None of Harris's evidence directly shows that Van Buskirk's statement is false. Therefore, we deny Harris's motion to strike as to paragraph No. 7 of Van Buskirk's affidavit.

{¶ 22} Harris also argues that paragraph No. 14 of Van Buskirk's affidavit should be struck because it is false, was not made on personal knowledge, and "is unsupported by the evidence of record." In paragraph No. 14 of her affidavit, Van Buskirk attests: "As of the date of this affidavit, Inmate Harris has not made any arrangements for the payment of any paper copies of the public records to be made available to him." Harris argues that Van Buskirk's statement is contradicted by the evidence in that he explicitly offered in a follow-up kite to pay for copies of the records he had requested.

{¶ 23} As discussed above, based on Van Buskirk's position, it can be inferred that she had personal knowledge of the status of Harris's public-records

requests such that her statement in paragraph No. 14 was made on personal knowledge. Additionally, in the context of paragraph Nos. 12 and 13 of her affidavit, Van Buskirk's statement in paragraph No. 14 that Harris had not made arrangements to pay for paper copies is neither false nor contradicted by Harris's evidence. In paragraph Nos. 12 and 13, Van Buskirk attests as to how to arrange for payment for copies. In context, her statement in paragraph No. 14 asserts that Harris had not arranged payment through the method related to him in paragraph No. 13. Therefore, Harris has not shown that paragraph No. 14 of Van Buskirk's affidavit should be struck.

{¶ 24} Harris also requests that we sanction respondents' counsel for violating R.C. 2323.51 (delineating steps for seeking sanctions for frivolous conduct in civil litigation) and Civ.R. 11 by failing to adequately investigate Harris's claims or by knowingly submitting false affidavits. However, because the statements contained in Van Buskirk's affidavit are not false—as explained above—we do not entertain that argument. We deny Harris's motion to strike Van Buskirk's "false" affidavit, and we deny the request for sanctions.

### 3. Harris's motion for judicial notice

{¶ 25} Harris also requests that we take judicial notice of "adjudicative facts" contained in a decision issued by this court, certain pages of the ODRC's records-retention schedule, a kite sent by him, and respondents' response to the kite. A "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). "Judicial notice may be taken at any stage of the proceeding." Evid.R. 201(F).

{¶ 26} Although Evid.R. 201(F) permits a court to take judicial notice at any stage of a proceeding, the rule does not constitute "'an exception to the rule that evidence must be timely offered in a judicial proceeding.'" *State ex rel.*

*Richard v. Chambers-Smith*, 2019-Ohio-1962, ¶ 12, quoting *AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 2008-Ohio-2565, ¶ 8, fn. 1. Harris filed his motion for judicial notice months after the deadlines for submitting evidence and rebuttal evidence. Therefore, we deny the motion.

### B. Claim for Civil Forfeiture

{¶ 27} Harris also requests a civil forfeiture under R.C. 149.351(B)(2) in the amount of $1,000 for each requested record that was disposed of contrary to ODRC's records-retention schedule. R.C. 149.351(B)(2) permits a "person who is aggrieved by the removal, destruction, mutilation, or transfer of" a public record to commence a civil action to recover a forfeiture "in the court of common pleas" of the county in which the violation occurred. Therefore, this court does not have jurisdiction over Harris's forfeiture claim. *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 11. Accordingly, we dismiss Harris's request for a civil forfeiture.

### C. Writ of Mandamus

{¶ 28} "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). A writ of mandamus is an appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *Wells v. Lakota Local Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 11; R.C. 149.43(C)(1)(b). To obtain the writ, "the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10. In general, however, providing the requested records to the relator after the suit is filed in a public-records mandamus case renders the mandamus claim moot. *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 2009-Ohio-1767, ¶ 14.

*1. Harris's request for a writ is moot as to some record requests*

**{¶ 29}** Respondents assert that NCCC staff produced paper copies of the records that were available to Harris on November 18, 2024, after he paid the copying costs. As a result, they argue, Harris's request for a writ of mandamus is moot. They admit that some records could not be located, but they argue that they do not have a duty to create new records or produce records that never existed or no longer exist.

**{¶ 30}** Because the evidence submitted by both parties shows that Harris was provided with the first and fourth items requested in Exhibit A (commissary receipts and NCCC vending-card rules) after he filed this action, we conclude that Harris's claim for a writ of mandamus is moot as to those records. *See State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5110, ¶ 13 (producing the requested records before the court's decision renders the mandamus claim for production of records moot).

**{¶ 31}** As for the employee sign-in logs requested in Exhibit N, Harris had requested those logs for June 24 through July 7, 2024, but the acknowledgment sent by NCCC mentions only the logs for June 30 through July 7, 2024. Harris argues that he was not provided with employee sign-in logs for June 24 through 29, 2024. Accordingly, we conclude that the part of Harris's request asking for employee sign-in logs for June 24 through 29, 2024, has not been rendered moot.

**{¶ 32}** Regarding the employee sign-in logs for June 30 through July 7, 2024, Harris admits that he received employee sign-in logs for those dates, but he argues that the logs he received are not from the library but, rather, from the education department. The basis for Harris's argument is that the majority of the signatures on the employee logs are those of teachers and that the teachers wrote "work" as the reason for their visits. However, this argument is unpersuasive, and Harris did not submit any evidence in support of it. His signature on the acknowledgment form acknowledges that the employee sign-in logs were provided

in response to his public-records request admitted as Exhibit N. Therefore, we conclude that Harris's request for June 30 through July 7, 2024 employee sign-in logs is moot.

{¶ 33} To summarize, Harris's mandamus claim has been rendered moot as to the first item requested in Exhibit A, asking for the commissary receipts; the fourth item requested in Exhibit A, asking for the vending-card rules; and the request in Exhibit N for the employee sign-in logs for June 30 through July 7, 2024. However, there is no evidence indicating that Harris's mandamus claim has been rendered moot as to his other public-records requests, including his request for the June 24 through 29, 2024 employee sign-in logs.

*2. Remaining public-records requests sent to the NCCC library (Exhibits L, M, and N)*

{¶ 34} Respondents do not deny that the NCCC library keeps a sign-in log for the library, a LexisNexis sign-in log, and an employee-visit record. Nor do they deny that those documents are public records or argue that they are exempt from release. Instead, respondents argue that they do not have a duty to produce records that cannot be located.

{¶ 35} Respondents did not submit an affidavit attesting that there are no records responsive to Harris's requests for the library sign-in logs, the LexisNexis sign-in logs, or the employee-visit records. The only evidence that *no* responsive records exist is the following statement made in respondents' counsel's letter to Harris: "As stated by the staff's reply to your Kite requesting the library sign in sheets (including NCCC staff visits), you were promptly informed that they are unable to be located at this time."

{¶ 36} Nevertheless, even if respondents' counsel's letter were a sworn affidavit, it is contradicted by other evidence—including the response to Harris's kite that the letter cites. The contradictory evidence suggests that additional responsive records exist or existed at that time. *See State ex rel. Frank v. Clermont*

*Cty. Prosecutor*, 2021-Ohio-623, ¶ 15 (even though a public office establishes by affidavit that all public records have been provided, the "attestations in [the] affidavit may be rebutted by clear and convincing evidence showing a genuine issue of fact that additional responsive records exist").

{¶ 37} In their responses to Harris's kites, library staff members stated that they had found some of the requested records but had been unable to locate certain other records. This contradicts the assertion made in the letter from respondents' counsel that no records could be found. The responses were sent the same day as each of Harris's kites, though one of the responses also addressed a request made the previous day. Accordingly, the responses are likely an accurate reflection of which records existed and were able to be located.

{¶ 38} For his part, Harris points to a statement made in Van Buskirk's affidavit as proof that all the records he requested in Exhibits L, M, and N exist. Van Buskirk attested that as of November 1, 2024, "items A, L, M & N are available, upon payment" of copying costs. However, Van Buskirk did not state that *all the items* that were requested in Exhibits A, L, M, and N were available. In light of the other evidence—namely, the responses to Harris's kites from the library staff and the evidence discussed below regarding the third item requested in Exhibit A—indicating that responsive records do not exist for all Harris's public-records requests, we do not interpret Van Buskirk's statement as meaning that all the records requested in Exhibits L, M, and N exist. The responses from the library staff remain the clearest evidence of what records responsive to Exhibits L, M, and N existed and were able to be located.

{¶ 39} The response from library staff to Harris's kite that was admitted as Exhibit M indicates that the July 8 library and LexisNexis sign-in sheets exist. Also, the statement in the same response that library staff located two items from June 24 and June 25 indicates that at least one record responsive to Harris's requests for the June 25 library and LexisNexis sign-in sheets exists. However, the

responses in Exhibits L, M, and N do not support the existence of records responsive to the requests in Exhibit L for June 20 and 21 library and LexisNexis sign-in sheets and the requests in Exhibit M for library and LexisNexis sign-in sheets for June 26 through 28. Therefore, Harris is entitled to a limited writ of mandamus ordering respondents to produce all records responsive to his requests for library and LexisNexis sign-in sheets for June 25 and July 8, 2024, or certify that no responsive records exist. *See State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶ 43 (granting a limited writ of mandamus ordering respondent "to produce [the requested] records or to certify that no such records exist" because of factual questions). However, he is not entitled to a writ of mandamus regarding the sign-in sheets for June 20 and 21 or June 26 through 28.

{¶ 40} As explained above, Harris's request in Exhibit N for the employee-visit records for June 24 through July 7 is partially moot; NCCC has provided the records for June 30 through July 7. However, there is no evidence indicating that NCCC provided to Harris the employee-visit records for June 24 through June 29. And there is no indication in the evidence that those records do not exist. Instead, it appears that Harris's request as to those dates was overlooked. Accordingly, Harris is also entitled to mandamus relief regarding the employee-visit records from the library for June 24 through 29.

### 3. Remaining items requested from the commissary (Exhibit A)

{¶ 41} Although the first and fourth items requested in Exhibit A—Harris's July 5, 2024 kite to the commissary—are moot, his requests for the second and third items are not moot. The second requested item is a paper copy of the commissary's June 2024 response to a kite from Harris in which a commissary worker indicated that Harris's vending card had been turned over to a unit staff member. Buckner's response to Harris's July 5, 2024 kite—as related by Harris—does not actually respond to this request or Harris's other requests. Further, respondents' counsel does not address this request in his August 19 letter.

**{¶ 42}** R.C. 149.43(B)(1) requires a public office or person responsible for public records to make copies of the requested records available to the requester within a reasonable time. By entirely failing to respond to the second item requested in Harris's July 5, 2024 kite, NCCC violated its duty under R.C. 149.43(B)(1). Accordingly, Harris is entitled to a limited writ of mandamus ordering respondents to provide Harris with any records responsive to the second item or certify that no responsive records exist.

**{¶ 43}** The third item requested in Exhibit A is a paper copy of "any documentation demonstrating which specific staff member took possession or was provided with [Harris's] vending card in May or June 2024." As with the second item requested in that exhibit, Buckner did not substantively respond to Harris's request. The parties disagree as to whether any records responsive to this request exist, and they point to different evidence in support of their arguments.

**{¶ 44}** Respondents argue that no records responsive to the third item requested in Exhibit A exist. They point to the August 19, 2024 letter from NCCC's counsel to Harris, in which counsel asserted that "[u]pon information and belief," no record responsive to this request exists because Harris was being housed in a TPU when NCCC staff attempted to deliver his vending card. As a result, the usual procedure was not followed, and no record of delivery was made. However, the letter continues, "NCCC continues to see if there are records of delivery after your release from segregation/TPU. This response will be updated." No evidence before us indicates that the response was updated.

**{¶ 45}** In response to respondents' argument, Harris points to the assertion in Van Buskirk's affidavit stating, "[I]tems [requested in exhibits] A, L, M & N are available, upon payment of the $0.05 per page copy costs." However, as noted above, Van Buskirk's affidavit does not state that all the items requested in Exhibits A, L, M, and N are available. Therefore, it does not contradict the letter from

NCCC's counsel or indicate that a responsive record was found after counsel's letter was sent.

{¶ 46} Furthermore—unlike the other statement in the letter from respondents' counsel—the response in Exhibit A that Harris will need to talk with the unit staff about the location of his vending card does not contradict the statement in the letter from respondents' counsel that no responsive record exists. Thus, Harris has not shown by clear and convincing evidence that a record responsive to the third item requested in Exhibit A exists. *See State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 8 (The relator has the "burden to prove, by clear and convincing evidence, that the records [he] requested exist and are public records maintained by the [public] office."). Accordingly, he is not entitled to a writ of mandamus as to that request.

### D. Statutory Damages

{¶ 47} Harris argues that he is entitled to statutory damages in connection with all his public-records requests because, when he filed his brief, respondents had provided him with only one page of records. Although a claim for a writ of mandamus becomes moot when a records request is fulfilled, a request for statutory damages based on the fulfilled records request is not moot. *See State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 2023-Ohio-1241, ¶ 7. Under R.C. 149.43(C)(2),[2] an inmate is entitled to statutory damages if (1) he transmitted a written public-records request by hand delivery, electronic submission, or certified mail, (2) he made the request to the public office or person responsible for the requested records, (3) he fairly described the records sought, and (4) the public office failed to comply with an obligation under R.C. 149.43(B).

---

2. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of ODRC is no longer eligible to receive an award of statutory damages, and some provisions have been renumbered. 2024 Sub.H.B. No. 265. We apply the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

{¶ 48} Respondents do not argue that Harris failed to satisfy the first three elements. Instead, they argue that Harris is not entitled to statutory damages, because after NCCC staff requested payment for copying costs, Harris waited until November 18, 2024, to pay for copies of the available records. Respondents assert that they complied with their obligation to produce the available records soon after Harris paid for the copies on November 18.

{¶ 49} However, as explained above, respondents did not fully comply with R.C. 149.43(B). They entirely failed to respond as to the second item requested in Harris's July 5, 2024 kite, admitted as Exhibit A. And NCCC failed to produce existing, public records responsive to at least one item requested in each of Exhibits L, M, and N. Harris requested the public records in July 2024, and some responsive records have still not been produced. Therefore, respondents have not complied with their obligation under R.C. 149.43(B)(1) to produce copies of responsive records within a reasonable time. Accordingly, Harris is entitled to statutory damages.

{¶ 50} "Statutory damages accrue at the rate of $100 for each business day the office failed to meet one of R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000. R.C. 149.43(C)(2)." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 15. When a requester makes multiple requests to the same office on the same day concerning the "same general subject matter," the requester is entitled to only a single statutory-damages award, not an award for each record requested. *State ex rel. Ware v. Parikh*, 2023-Ohio-2536, ¶ 31.

{¶ 51} In this case, respondents failed to fully comply with their obligations under R.C. 149.43(B) regarding four electronic kites: one that was sent on July 5, two that were sent on July 9, and one that was sent on July 10. Respondents argue that the four kites that remain at issue were sent on the same day to the same office and concern the same general subject matter. However, the kites were not all sent

16

to the same office, and they were sent on three different days. Therefore, respondents' argument that Harris would be entitled to only a single statutory-damages award for these four kites is not well taken. Nevertheless, we find that the kites in Exhibits L and M, which were sent on the same day and concern the same request for sign-in sheets, constitute a single public-records request for purposes of calculating statutory damages.

{¶ 52} More than ten days have passed since Harris filed this mandamus action, and respondents have still not fully complied with their obligations under R.C. 149.43(B) with respect to public-records requests sent on three different days. Therefore, we award Harris $3,000 in statutory damages.

### E. Court Costs

{¶ 53} Harris also requests court costs and "copy and postage costs incurred by [him] in bringing this action." "If [a] court orders the public office or the person responsible for the public record to comply with division (B) of this section, the court shall determine and award to the relator all court costs, which shall be construed as remedial and not punitive." R.C. 149.43(C)(3)(a)(i). Because we grant a writ of mandamus, Harris is entitled to court costs.

{¶ 54} However, to the extent that Harris requests reimbursement for money he spent to copy and mail the documents he filed—as opposed to the assessed postage costs—we deny his request. The definition of "costs" in S.Ct.Prac.R. 18.05(B) does not include such expenses.

### III. CONCLUSION

{¶ 55} For the foregoing reasons, we grant Harris's motion to partially withdraw his "motion to strike [the] false affidavit," but we deny Harris's motion to strike the affidavit," his request for sanctions, and his motion for judicial notice. We grant a writ of mandamus ordering respondents to provide Harris with the NCCC employee-visit records for June 24 through June 29, 2024. We grant a limited writ of mandamus ordering respondents to provide copies of the following

records to Harris or certify that no responsive public records exist: (1) the commissary's June 2024 response to a kite from Harris in which a commissary worker indicated that Harris's vending card had been turned over to a unit staff member, (2) the library sign-in and LexisNexis sign-in sheets for June 25, 2024, and (3) the library sign-in and LexisNexis sign-in sheets for July 8, 2024. We deny mandamus relief as to Harris's other public-records requests.

{¶ 56} We award Harris court costs and $3,000 in statutory damages. However, we deny Harris's request for reimbursement for money he spent to copy and mail the documents he filed. And we dismiss Harris's request for a civil forfeiture under R.C. 149.351.

Writ granted in part<br>and denied in part.

———————————

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 57} This is another public-records case in which this court must compel employees of the Ohio Department of Rehabilitation and Correction ("ODRC") to comply with their statutory duty to fulfill valid public-record requests submitted by people incarcerated in correctional institutions. The court today enforces that duty by awarding statutory damages to relator, Lionel Harris. I concur in the court's decision, with one exception: Harris is entitled to an award of $4,000 in statutory damages. Consequently, I concur in part and dissent in part.

**Statutory Damages**

{¶ 58} The majority awards Harris $3,000 in statutory damages because for more than ten days following the filing of this mandamus action, respondents—Tom Watson, T. Buckner, Dave Cedar, and the North Central Correctional Complex library—failed to fully comply with their obligations under R.C. 149.43(B) regarding four electronic kites Harris sent: one sent on July 5, 2024, two sent on July 9, and one sent on July 10. According to the majority, "[w]hen a

requester makes multiple requests to the same office on the same day concerning the 'same general subject matter,' the requester is entitled to only a single statutory-damages award, not an award for each record requested." Majority opinion at ¶ 50, quoting *State ex rel. Ware v. Parikh*, 2023-Ohio-2536, ¶ 31. The majority concludes that the two kites Harris sent on July 9 are really one request, because these kites "were sent on the same day and concern the same request for sign-in sheets." *Id.* at ¶ 51.

{¶ 59} That holding is not consistent with the plain language of the Public Records Act. Under R.C. 149.43(C)(2),[3] statutory damages may be awarded "[i]f a requester *transmits* a written request by hand delivery, electronic submission, or certified mail to inspect or receive copies of any public record in a manner that fairly describes the public record . . . to the public office or person responsible for the requested public records." (Emphasis added.) The key word here is "transmits." Without a *transmission* by hand delivery, certified mail, or electronic means, statutory damages are not available. It is therefore the form and the number of transmissions that control how many separate awards of statutory damages an aggrieved public-records requester may receive. The *content* of the requested records—i.e., their general subject matter—has no statutory hook at all and plays no part in the analysis. *See generally State ex rel. Teagarden v. Igwe,* 2024-Ohio-5772, ¶ 127 (Kennedy, C.J., concurring in part and dissenting in part); *Parikh* at ¶ 51 (Kennedy, C.J., concurring in part and concurring in judgment only in part). And here, because Harris requested public records in four transmissions—four separate kites—and respondents failed to comply with their statutory duties with respect to all four requests, he is entitled to $4,000 in statutory damages.

---

3. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of the ODRC is no longer eligible to receive an award of statutory damages under R.C. 149.43(C), and some provisions have been renumbered. 2024 Sub.H.B. No. 265. We apply the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

## Conclusion

**{¶ 60}** For these reasons, I concur in part and dissent in part.

_____

Lionel Harris, pro se.

Mansour Gavin, L.P.A., Edward O. Patton, and Katie E. Epperson, for respondents.

_____